UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IVAN ARNOLD, an individual, on behalf of himself and all others similarly situated | |
| Plaintiff, | Case No. |
| vs. | |
| HOMEAWAY, INC., a Delaware corporation, and DOES 1-10, | |
| Defendants. | |

**FIRST AMENDED COMPLAINT FOR: (1) BREACH OF CONTRACT; (2) FRAUD; (3) FRAUDULENT CONCEALMENT and (4) VIOLATION OF V.T.C.A., BUS. & C. §17.41, et seq.**

Plaintiff Ivan Arnold ("Plaintiff"), by and through his undersigned counsel, brings this action on behalf of himself and all others similarly situated in the United States against defendant HomeAway, Inc. ("HomeAway"). Plaintiff alleges as follows:

**SUMMARY OF THE ACTION**

1.      This action arises from defendant HomeAway, Inc.'s bait and switch tactics which have materially damaged Plaintiff and hundreds of thousands of other vacation home owners and managers.

2.      Prior to February 9, 2016, HomeAway, through its various website

properties (including, *inter alia*, HomeAway.com, VRBO.com and VacationRentals.com) operated as a vacation rental marketplace.  It principally served 2 categories of users:  (1) vacation home owners and managers who wanted to rent those homes to tenants on a short term basis ("owners"), and (2) travelers who wanted to rent vacation homes on a short term basis ("travelers").

3.     As a vacation rental marketplace, HomeAway charged the owners who used its websites annual subscription fees for the right to list their vacation homes for rent on one or more of HomeAway's website properties.  In exchange for those fees, vacation home owners could list their homes for rent on one or more of HomeAway's websites, and could access and use various booking, tracking and financial tools provided by HomeAway.

4.     As a vacation rental marketplace, HomeAway did not charge any fee to travelers looking to rent vacation properties from HomeAway's homeowner customers.  Travelers could search the site, locate a vacation home to rent, communicate with the owner of the vacation home and rent the vacation home without paying any fee to HomeAway.

5.     Owners vastly preferred this marketplace model whereby they paid the costs of listing and renting their vacation properties through HomeAway's websites and travelers were required to pay nothing other than the cost of the vacation rental itself.  Owners preferred this marketplace model because many travelers would be deterred from renting owners' vacation homes if they were to be

charged fees on top of the cost of the rental itself.  In other words, if travelers were forced to pay a fee whenever they rented a vacation home, owners would lose bookings and lose money.

6.     HomeAway was well aware of these facts.  As a result, it consistently represented that it would not charge fees to consumers, saying, "We are going to be free to travelers."  Instead, HomeAway said it earned and would continue to earn its revenues principally by charging annual subscription fees to owners and by charging additional fees to those owners for other, optional, services and tools.

7.     In reliance on HomeAway's marketplace model and its accompanying promise that it would not charge fees to travelers, Plaintiff and hundreds of thousands of other owners entered into year-long contracts with HomeAway for the right to list their vacation homes for rent on HomeAway's websites.  In exchange for that right, Plaintiff and other owners paid HomeAway hundreds or thousands of dollars per property they wished to list on HomeAway's sites.  For example, Plaintiff's total subscription fee for a single vacation home for 12 months was $1,848.00.

8.     HomeAway knew that Plaintiff and other owners were relying on its marketplace model, including its promise not to charge fees to travelers, when they entered into year-long contracts with HomeAway and paid their annual subscription fees.

9.     And, indeed, Plaintiff and other owners had every reason to expect

that HomeAway would continue to follow this marketplace model and remain free to travelers.  The contracts that Plaintiff and other owners entered into with HomeAway specified that the charges in effect at the time Plaintiff and other owners entered into their subscription agreements with HomeAway would govern throughout the term of those agreements (*i.e.*, for one year).  Meaning that, since the charges in effect at the time Plaintiff and other owners entered into their subscription agreements did not include fees to travelers, HomeAway was contractually prohibited from charging fees to travelers during the year those contracts were in effect.

10.     Despite that contractual provision and despite HomeAway's prior representations that its sites would remain free to travelers, on February 9, 2016, HomeAway unilaterally abandoned and materially changed its model and rate structure in the middle of Plaintiff's and other owners' one-year subscription periods.

11.     Without regard to the significant negative impact it would have on owners' ability to rent their properties through HomeAway's websites, on February 9, 2016, HomeAway abandoned the marketplace model to which it had previously adhered and to which it had previously promised it would continue to adhere, and instead adopted a materially different "online travel agency" model ("OTA model").  Among other things, under this new OTA model, HomeAway began doing precisely what it promised it would not do – charging fees to travelers.

4

12.     Those newly instituted "service fees" to travelers, which range from 4% to 10% of the total price of the vacation rental, have had precisely the effect Plaintiff and other owners feared:  they have reduced the number and value of bookings by travelers, resulting in significant damage to Plaintiff and other owners.

13.     By this action, Plaintiff seeks compensation for the damages he and other, similarly situated owners have suffered as a result of HomeAway's breaches of contract and fraud.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the controversy is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from HomeAway; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

15.     Venue is proper in this District under 28 U.S.C. §§ 1391 because HomeAway resides, for purposes of venue, in this District and is subject to personal jurisdiction in this District.

## PARTIES

16.     Plaintiff, Ivan Arnold ("Plaintiff"), is an individual.  Plaintiff owns a

vacation home located in the United States.  Plaintiff has been a HomeAway subscriber since at least 2013.  On February 2, 2016, Plaintiff renewed his HomeAway subscription at a total cost of $1,848.  Plaintiff's contract with HomeAway consists of (and his relationship with HomeAway is governed by) the HomeAway Terms and Conditions effective September 15, 2015, a true and correct copy of which is attached to this Complaint as Exhibit 1.

17.     Defendant HomeAway, Inc. ("HomeAway") is a corporation duly organized under the laws of the State of Delaware, with its headquarters and principal place of business in Austin, Texas.  HomeAway operates the world's largest online market for the vacation and rental industry.  It owns and operates at least 40 websites, including, in the United States, HomeAway.com, VRBO.com and VacationRentals.com

18.     The true names, roles and/or capacities of Defendants named as DOES 1 through 10, inclusive, are currently unknown to Plaintiff and, therefore, are named as Defendants under fictitious names.  Plaintiff will identify their true identities and their involvement in the wrongdoing at issue if and when they become known.

19.     The acts alleged to have been done by Defendants, and each of them were authorized, ordered or done by their directors, officers, agents, partners, employees or representatives while actively engaged in the management of each defendant's respective affairs.

## NATURE OF THE ACTION

20.     Vacation rentals are fully furnished, privately owned residential properties, including homes, condominiums, villas and cabins, that property owners and/or property managers rent to the public on a nightly, weekly or monthly basis.

21.     HomeAway operates the world's largest online market for vacation rentals.  As of the end of 2014, HomeAway's websites included approximately 1 million paid vacation rental listings.  In 2014 alone, HomeAway's websites were visited approximately 884 million times.

22.     HomeAway serves two major categories of users:  (1) vacation home owners and managers who wish to rent vacation homes to tenants on a short term basis ("owners"), and (2) travelers who looking to rent vacation homes on a short term basis ("travelers").

23.     Owners pay HomeAway an annual subscription fee, in exchange for which they are permitted to list their vacation homes for rent on one or more of HomeAway's websites.  Owners who list their vacation homes are permitted to include information and material about their vacation home in their listing, including (among other things) a description of the vacation home, information about the cost to rent the home, information regarding when the vacation home is available to rent and pictures.

24.     Through most or all of its websites, HomeAway offers more than one

subscription "level" to owners.  For example, on VRBO.com, HomeAway offers

five subscription levels: classic, bronze, silver, gold and platinum, with each

subscription level costing more than the level below.  Thus, a bronze subscription

costs more than a classic subscription, a silver subscription costs more than a

bronze subscription, and so on.  Depending on the level, these subscriptions cost

owners several hundred to a thousand dollars for a one-year term.

25.     According to HomeAway's marketing materials, owners obtain

greater benefits the higher the level of their subscription.  The most significant

benefit owners receive for purchasing higher subscription levels is higher ranking

in search results.

26.     When a traveler searches one of HomeAway's websites for a vacation

home (usually according to criteria such as location, travel dates and number of

guests), the website produces a search result that consists of a list of vacation

homes meeting most or all of the search criteria input by the traveler.  Vacation

homes posted on the website by silver-level subscribers are supposed to appear

above vacation homes posted by classic-level subscribers; vacation homes posted

on the website by gold-level subscribers are supposed to appear above vacation

homes posted by silver-level subscribers; and vacation homes posted on the

website by platinum-level subscribers are supposed to appear above vacation

homes posted by gold-level subscribers.

27.     In addition to these different subscription levels, HomeAway also

sells optional "bundles" to owners.  For owners in the United States, HomeAway offers 2 bundles:  (1) a "U.S. Bundle", and (2) a "Global Bundle".  Purchasing the U.S. Bundle is supposed to cause owners' vacation homes to appear on HomeAway's three principal United States websites:  VRBO.com, HomeAway.com and VacationRentals.com.  Purchasing the Global Bundle is supposed to cause owners' vacation homes to appear on all three of those United States websites, plus 24 additional international websites owned by HomeAway. HomeAway sells these bundles on a year-long subscription basis at a cost of several hundred dollars each.

28.    Prior to February 9, 2016, HomeAway obtained its revenues principally through the sale of these subscriptions and bundles to owners.  It did not charge travelers for the use of its websites and did not charge travelers booking fees.

29.    Indeed, HomeAway repeatedly stressed that remaining free to travelers was one of the central pillars on which its business and business model were built.

30.    HomeAway said publicly that, when it formed, it had specifically chosen to operate as a "marketplace" wherein it charged owners fees to list their vacation homes on its web sites, rather than charging consumers to use the sites. On or about September 7, 2011, at the Capital Factory Demo Day, Brian Sharples ("Sharples"), HomeAway's co-founder and CEO, described this "marketplace"

model as being central to HomeAway's business plan.  When creating the HomeAway business model, Sharples learned of Expedia, Inc.'s attempted foray into the vacation rental market, its failure and the reasons for its failure.  As HomeAway learned, Expedia purchased Vacationspot.com, then the leading vacation rental marketplace business, in March 2000, but Vacationspot.com went out of business soon after its acquisition by Expedia.  Foremost among the reasons for Expedia's failure with vacationspot.com was its decision to change the website's model from a marketplace where owners paid subscription fees for the right to list their properties on the website into an OTA with a fee-based model where customers were charged a percentage of the total booking price.

31.     Consistent with these claims that the marketplace model wherein travelers would not be charged by HomeAway for using the site or booking vacation homes was a core and indelible feature of HomeAway and its web sites, HomeAway continuously promoted that its websites were was free to travelers and would remain free to travelers.  Thus, Sharples said during a November 2014 conference call that HomeAway continuously published on its web site from early November 2014 until at least the end of 2015, "We will also by the way continue to be free for travelers."

32.     HomeAway distinguished itself from competitors like TripAdvisor and Airbnb on the basis that travelers could search for and book vacation homes on its websites without being charged anything other than the cost of the vacation

rental itself and made statements designed to indicate that HomeAway would remain free to travelers. Thus, during a November 2014 conference call that HomeAway continuously published on its web site from early November 2014 until at least the end of 2015, Sharples said:

> [W]hat will be different on HomeAway? Online bookable doesn't mean we'll get out of the subscription business. Our customers love subscriptions, they love it. They don't want to be paying. The vast majority of customers don't want to be paying commissions to somebody. *So, we are going to keep to that as a differentiator in our business, no question about it*.
>
> * * *
>
> *We are going to be free to travelers*. Trip advisor and Airbnb have chosen to charge big fees to travelers. Well, we're going to have a pretty sizeable marketing budget in the next few years. And we're going to be letting everybody know, *when you come to our platform and you don't pay a fee and we think that's a big deal*.

33.     Consistent with and reinforcing its representations that the marketplace model wherein it would charge subscription fees to homeowners but impose no charges on travelers constituted a central tenet of its products, HomeAway prominently stated on its web site until at least October 27, 2015: "we'll never charge a fee" to travelers for booking stays in the vacation properties

listed on HomeAway's web sites.

34.    HomeAway's websites similarly promoted the marketplace model of HomeAway's product offerings by advertising that those sites were free to travelers:

a.    "VRBO has no booking fees and is free for travelers." (This statement prominently appeared on HomeAway's VRBO.com home page until at least October 29, 2015)

b.    "No traveler fees.  Free to book with no hidden costs." (This statement prominently appeared on HomeAway's HomeAway.com home page until at least October 25, 2015)

c.    "No fees for travelers.  No online booking fees or hidden costs."  (This statement prominently appeared on HomeAway's VacationRentals.com home page until at least October 23, 2015)

35.    HomeAway did, for several years, adhere to this marketplace model whereby it charged owners fees to list their vacation properties on HomeAway's websites but permitted travelers to search and book without any charge other than the cost of the vacation home itself.

36.    It even drafted its agreement with subscribing owners like Plaintiff to reflect this marketplace model.  Thus, HomeAway's Terms and Conditions provided at all relevant times before February 9, 2016:

"HomeAway.com and other Sites act as a venue to allow homeowners and

12

property managers who advertise on the Site (each, a "member") to offer for rent in a variety of pricing formats, a specific vacation or short term rental property to potential renters…."

37.     In reliance on HomeAway's representations that it was and would remain a vacation rental marketplace free to travelers booking vacation homes on its sites, Plaintiff purchased a platinum level subscription and global bundle from HomeAway on February 2, 2016.  He paid $1,840 to HomeAway for that subscription and bundle.  At the time Plaintiff purchased that year-long subscription and bundle, HomeAway's fees and charges did not include any booking or service fees to travelers.

38.     When Plaintiff purchased that subscription and bundle, HomeAway's standard contract, titled Terms and Conditions, specified that HomeAway's rates and fees would not change during the one-year term of Plaintiff's subscription:

> "For subscription listings, **the rates in effect at the time of the member's next subscription renewal, new listing or a member's upgrade or any other additional or new order of any product or service will govern for such renewal or other order**."

39.     The contract also specified that any non-clerical or substantive changes to the Terms and Conditions would be effective only if approved by Plaintiff:

> "We reserve the right, in our sole discretion, to amend these Terms, in

13

whole or in part, at any time, with or without your consent and you acknowledge and agree that **your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature**. Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms and will be effective immediately. **If you disagree with any non-clerical and/or substantive amendment to these Terms, then** (i) your sole remedy as a traveler, or any other user other than a member, is to discontinue your use of the Site, and (ii) **your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment** and you agree that you are responsible for keeping a copy of such terms."

40.     The contract further provided that "[i]n the event of any conflict between these Terms and any other terms and conditions applicable to a product, tool or service offered on our Site, the Terms herein shall prevail."

41.     Thus, under the terms of Plaintiff's and HomeAway's contract, HomeAway was prohibited from changing its fees or rates during the one-year

14

term of Plaintiff's subscription without Plaintiff's consent.  And, even if HomeAway did purport to impose different or additional charges, the contract applicable to Plaintiff's subscription would still control and negate any such different or additional charges.

42.     At no time since renewing his subscription on February 2, 2016, has Plaintiff consented to any change in HomeAway's fees or rates.

43.     Nevertheless, despite these contractual obligations and without Plaintiff's consent, on February 9, 2016, HomeAway unilaterally, substantively, non-clerically and materially changed its fee and rate structure.  No longer would HomeAway adhere to the marketplace model that it had previously promoted as superior to other models.  No longer would HomeAway be free to travelers as it had previously promised it would remain.

44.     On February 9, 2016, HomeAway began doing precisely what it promised it would not do and exactly what the contract does not permit.  It began charging service fees to travelers.

45.     After February 9, HomeAway began charging travelers "service fees" equal to between 4% and 10% of the rental rate.  Thus, far from being free to travelers, HomeAway's newly imposed service fee costs travelers several hundred dollars on top of their rental rate.

46.     The effect of HomeAway's new "service fee" has been significant, immediate and (for Plaintiff and other owners) consistently negative.

15

47.     Plaintiff and other owners have been damaged by HomeAway's adoption of its new "service fee," which was done without notice and in breach of HomeAway's contracts with Plaintiff and other owners.

a.      Plaintiff's and other owners' subscriptions to HomeAway's websites have been devalued.  Plaintiff and other owners paid hundreds or thousands of dollars to subscribe to HomeAway's websites at a time when HomeAway did not charge fees to travelers.  Had HomeAway been charging fees to travelers when Plaintiff and other owners subscribed, Plaintiff and other owners either would not have subscribed or would not have paid as much for their subscriptions as they did pay.

b.      Plaintiffs and other owners have lost bookings because of HomeAway's "service fee" to travelers.  When confronted with an obligation to pay fees on top of the cost of a vacation rental, travelers decline to rent Plaintiff's and other owners' vacation homes.  As a result, Plaintiff and other owners are receiving fewer bookings than they would have received in the absence of HomeAway's new "service fee" to travelers.

## CLASS ALLEGATIONS

48.     This action is brought and may properly be maintained as a class action pursuant to the relevant provisions of Fed. R. Civ. P. 23(b) and (c).  Plaintiffs bring this action on behalf of themselves and all other persons similarly situated as representative members of the following proposed class (the "Class"):

16

All vacation home owners and managers who purchased a subscription to one or more of HomeAway's web sites between February 9, 2015 and February 8, 2016. Expressly excluded from the Class are HomeAway and its subsidiaries, affiliates, officers, directors and employees.

49.     In this suit, plaintiff seeks for the members of the Class both equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief and damages as set forth more fully below.

## NUMEROSITY OF THE CLASS

50.     The proposed Class is so numerous that the individual joinder of all their members in one action is impracticable. While the exact number and the identities of Class members are not completely known at this time but can be ascertained through appropriate investigation and discovery, Plaintiffs estimate the Class numbers in the tens of thousands or hundreds of thousands.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

51.     Common questions of law and fact arising out of the claims here at issue exist as to all members of the Class and predominate over any individual issues. These common legal and factual questions include, but are not limited to, the following:

        a.     Whether the Terms and Conditions restrict HomeAway from unilaterally changing its fees and rates without approval;

17

b.      Whether HomeAway represented that it would not charge fees to travelers;

c.      Whether HomeAway knew at the time that it made those representations that they were false;

d.      Whether HomeAway made the representations alleged herein without knowledge of their truth;

e.      Whether HomeAway began charging fees to travelers;

f.      Whether HomeAway's practice of charging fees to travelers breached the parties' contracts;

g.      Whether HomeAway's practice of charging fees to travelers deprived Class members of the benefits of their contracts;

h.      Whether HomeAway's conduct injured the Class;

i.      The amount of revenues and profits HomeAway received and/or the amount of monies or other obligations imposed on or lost by Class members as a result of HomeAway's conduct;

j.      Whether Class members are threatened with irreparable harm and/or are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

k.      Whether Class members are entitled to payment of equitable monetary relief and/or damages plus interest thereon, and if so, what is the nature of such relief.

18

## TYPICALITY OF CLAIMS

52.     Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and all members of the Class entered into substantially identical contracts with HomeAway pursuant to which they were permitted to list their vacation homes for rent on one or more of HomeAway's websites.  Pursuant to the terms of those contracts, HomeAway was prohibited from changing its rates and charges during the terms of those agreements without the express approval of Plaintiff and the Class.  Notwithstanding the fact that Plaintiff and the Class did not approve any change to HomeAway's rates or fees, HomeAway unilaterally and without any legal right to do so changed its rates and fees during the terms of its contracts with Plaintiff and the members of the Class.  Plaintiff and the Class have been damaged by HomeAway's conduct in that their subscriptions to HomeAway's websites have been devalued to an amount less than they paid for those subscriptions and in that they have lost bookings of their vacation rentals they otherwise would have received in the absence of HomeAway's impermissible "service fee" to travelers.

## ADEQUATE REPRESENTATION

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class in that he has no irreconcilable conflicts with or interests materially antagonistic to those of the other Class members.

54.     Plaintiff has retained attorneys experienced in the prosecution of class actions, and who have been previously appointed by courts as adequate class

counsel.

## SUPERIORITY AND SUBSTANTIAL
## BENEFITS OF CLASS LITIGATION

55.     A class action is superior to other available methods for the fair and

efficient group-wide adjudication of this controversy and possesses substantial

benefits. Individual joinder of all members of the Class is impracticable, and no

other group method of adjudication of all claims asserted herein is more efficient

and manageable while at the same time providing all the remedies available to

ensure the full purpose of the laws at issue here are effectuated.

56.     Furthermore, as the damages suffered by each individual member of

the Class may be relatively small compared to the expense and burden of

individual litigation in order to obtain such relief, it would be difficult or

impossible for individual members of the Class to redress the wrongs done to

them, and the cost to the court system of adjudicating such litigation on an

individual basis would be substantial.  The Class members, because of the amounts

at stake, would have little interest in individually controlling the prosecution of

separate actions.  To counsel's knowledge there is no substantial litigation

concerning this controversy pending against the parties.

57.     It is not anticipated that there will be any difficulties in the

management of this litigation due to the focus of the wrongdoing on HomeAway's

conduct and the level of its knowledge of the true facts.  In contrast, individualized

litigation would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  The conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class member as compared to other methods for the group-wide adjudication of this controversy.

58.     Thus, both the Class and the court system achieve substantial benefits by the prosecution of this action on a class-wide basis by avoiding the burden of multiple litigation involving identical claims, as well as by aiding legitimate business enterprises in curtailing illegitimate competition and ensuring a therapeutic and deterrent effect on those companies such as HomeAway that indulge in breaches of contract and fraudulent practices.

59.     Notice of the pendency of and any resolution of this action can be provided to the Class members by individual mailed notice, or the best notice practicable under the circumstances.

60.     This action is also properly certified to proceed on a class-wide basis under Fed. R. Civ. Proc. 23(b)(1) and (b)(2) because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible

standards of conduct for HomeAway;

b.      Because of the nature of some of the relief sought, the prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or would substantially impair or impede the ability of such Class members to protect their interests; and

c.      Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final injunctive relief with regard to the members of the Class as a whole in terms of the equitable relief sought.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

### (On Behalf of Plaintiff and the Class)

61.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 60 above as though fully set forth herein.

62.     As set for the herein, on or about February 2, 2016, Plaintiff and HomeAway entered into a contract attached hereto as Exhibit A.

63.     Plaintiff has fully performed all material covenants, conditions and obligations he was required to perform by reason of the contract, except to the extent waived, excused or made impossible by HomeAway's breaches of the

contract.

64.     Section 21 of the contract contains a provision (the "rates in effect"

provision) that provides:

> "For subscription listings, **the rates in effect at the time of the**
> **member's next subscription renewal, new listing or a member's**
> **upgrade or any other additional or new order of any product or**
> **service will govern for such renewal or other order**."

65.     As used in that "rates in effect" provision of the contract, the term

"rates" refers to all charges imposed by HomeAway with respect to the listing for

which a subscription was purchased or renewed.  It does not refer only to the

amounts charged to owners for subscriptions to HomeAway's web sites.

  a.     HomeAway offers numerous products and services to Plaintiff

  and its other subscribers separate and apart from subscription listings and

  imposes fees for those additional products and services.  For example, at the

  time Plaintiff entered into the contract at issue herein, existing subscribers

  could, at any point during the term of their subscriptions, purchase a

  "Featured Listing" status for their listing.  Likewise, HomeAway offered

  Plaintiff and other owners the ability to purchase the ability to advertise

  "Special Offers" to travelers.  The term "rates" in the "rates in effect"

  provision also refers to the charges imposed by HomeAway for those other

  products and services and cannot, therefore, be construed to refer only to the

rates charged for subscriptions.

b.     When the contract refers to rates charged for subscriptions, it uses the term "subscription rates" rather than merely "rates".  Thus, section 21 provides: "Subscription rates … are set at the time of a user or member's purchase of the subscription or renewal…."  Likewise, section 29 states: "For any subscription paid for by credit card, such subscription shall automatically renew at the expiration of the then-current term … at the then-current non-promotional subscription rate."  Section 29 also provides that: "If your subscription does not auto-renew or expires at the end of your then current subscription term and you desire to renew your subscription, you will be required to pay the then-current non-promotional subscription rate to renew your subscription or to activate a new subscription."

c.     Construing the term "rates" in the "rates in effect" provision of the contract to refer to the rates HomeAway charges owners for subscriptions would make that provision redundant of other provisions in the contract, including the provision that appears just two sentences earlier, which provides: "Subscription rates … are set at the time of a user or member's purchase of the subscription or renewal…."

d.     At the time the contract became the effective Terms and Conditions applicable to the use of HomeAway's web sites (*i.e.*, on or about September 15, 2015), HomeAway represented on its web site – the same

24

web site whose use the contract controlled and the same web site on which

the contract appeared – that it would "never charge a fee to book" vacation

properties.

   e.  Section 21 of the February 2, 2016 contract provided that "[i]n

the event of any conflict between these Terms and any other terms and

conditions applicable to a product, tool or service offered on our Site, the

Terms herein shall prevail."  That provision makes clear that the contract's

terms are intended to be "applicable" to "product[s], tool[s and] service[s]

offered" on HomeAway's web sites rather than merely control the parties'

conduct towards one another.  Accordingly, the "rates in effect" provision is

intended to and does control the rates "applicable" to subscription *listings*,

not just the rates to be charged to Plaintiff for a subscription.

66. HomeAway's commitment in the "rates in effect" provision to not

change the rates applicable to subscriptions during the term of those subscriptions

– and especially its obligation to not begin charging fees to travelers during the

terms of those subscriptions – was material to Plaintiff and the Class and was part

of the value they purchased when paying for their subscriptions.  Although, if they

were imposed, such fees would be charged to travelers, rather than Plaintiff and the

Class, the imposition of such fees would materially affect Plaintiff and the Class.

Were HomeAway to impose charges on travelers in connection with their rental of

Plaintiffs' and Class members' properties, the total cost of such rentals to travelers

would necessarily increase, which would lead directly to fewer bookings of Plaintiffs' and Class members' properties.  Plaintiff and other Class members would then either have to suffer the loss of income resulting from this lower rental volume or suffer the loss of income that would result from lowering the rental rates they charged to offset HomeAway's charges to travelers.

67.     HomeAway knew this at the time it entered into the contract.  Indeed, it is precisely because HomeAway was aware that the marketplace model of its products, wherein it did not charge fees to travelers, was a key benefit that subscribers like Plaintiff and the Class members were paying for when purchasing subscriptions that HomeAway repeatedly and prominently represented on its web sites that its products did not and would not involve the charging of booking or other fees to travelers.

68.     Nevertheless, in breach of the "rates in effect" provision of the parties' contract, on or about February 9, 2016, HomeAway purported to increase the rates applicable to the subscription listing Plaintiff had purchased days earlier by imposing a fee on travelers who booked Plaintiff's property offered for rent in that listing.

69.     Section 21 of the contract also contains a provision (the "non-clerical change" provision) that prohibits HomeAway from making any non-clerical or substantive changes or amendments to the contract without Plaintiff's consent. That "non-clerical change" provision specifies:

"We reserve the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge and agree that **your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature**.  Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms and will be effective immediately.  **If you disagree with any non-clerical and/or substantive amendment to these Terms, then** … **your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment** and you agree that you are responsible for keeping a copy of such terms."

70.     Despite this provision, on or about February 9, 2016, HomeAway purported to unilaterally make non-clerical, substantive amendments to the contract between it and Plaintiff by, *inter alia*, adding a new Section 9 to the contract between it and Plaintiff.  That new Section 9 purported to authorize HomeAway to charge fees to travelers who used the subscription listing Plaintiff

27

purchased on February 2, 2016, to rent Plaintiff's property.

71.    Although the fees imposed by HomeAway pursuant to that new section 9 were charged to travelers, rather than Plaintiff, the addition of that new Section 9 to the contract and HomeAway's imposition of the fees that new Section 9 purported to permit constituted a material, substantive and non-clerical change in the contract between Plaintiff and HomeAway.

a.    Prior to HomeAway's purported addition of that new Section 9 to the contract, no provision of that contract authorized HomeAway to charge fees to travelers in connection with Plaintiff's subscription listing.  In the absence of a provision authorizing HomeAway to charge fees to travelers, HomeAway could not charge fees to travelers in connection with Plaintiff's subscription listing.  Indeed, that is precisely why HomeAway sought to add the new Section 9 to the contract before beginning to charge such fees.  Thus, the addition of that new Section 9 purported to authorize HomeAway to engage in conduct with respect to Plaintiff's subscription listing that was previously not authorized or permitted.

b.    While the fees described in the new Section 9 were authorized to be charged to travelers, rather than Plaintiff and the Class, the imposition of those fees materially affected Plaintiff and the Class.  Those fees necessarily increased the total cost of renting Plaintiff's and other Class members' properties.  Travelers who rent properties through HomeAway's

28

web sites are price sensitive.  Increases in cost to travelers reduce the number of bookings generated by the subscription listings purchased by Plaintiff and the Class, which reduces the rental revenues earned by Plaintiff and the Class through those subscription listings and thereby diminishes the value of those subscription listings to Plaintiff and the Class.

72.    The February 9, 2016 amendment also effected a substantive, non-clerical change to Plaintiff's contract in violation of the "non-clerical change" provision because it purported to prohibit Plaintiff from accessing any of the HomeAway web sites (even though he had purchased subscriptions relating to those web sites) unless he agreed to *all* provisions of the amended contract, including the new Section 9.

a.    The first paragraph of the February 9, 2016 amended contract stated: "If you do not fully agree to these Terms and any other terms and conditions posted or linked to any Site, you are not authorized to access or otherwise use the Site."  As used therein and throughout the February 9 amendment, the word "Terms" refers to all of the provisions in that document, and therefore necessarily includes the new Section 9.

b.    The third paragraph of the February 9, 2016 amendment then specifies:  "You should read through all the Terms carefully.  The Terms constitute a legally binding agreement between you and HomeAway. …The term 'you' refers to the user … listing a property…."  Thus, the February 9,

2016 amendment purports to make the new Section 9 binding on Plaintiff in his capacity as an owner.

      c.    Since Plaintiff was not previously bound by the new Section 9 or any other provision that made travelers' fees a feature of the subscription listing Plaintiff purchased from HomeAway on February 2, 2016, the February 9, 2016 amendment necessarily constituted a non-clerical, substantive change to the contract made without Plaintiff's consent in violation of the "non-clerical change" provision of Section 21.

    73.    Accordingly, HomeAway has materially breached the parties' contract by (1) purporting to change the rates applicable to Plaintiff's subscription listing in violation of the "rates in effect" provision of that contract, and (2) purporting to make non-clerical, substantive amendments to the parties' contract unilaterally and without Plaintiff's consent in violation of the "non-clerical change" provision of that contract.

    74.    As a direct and proximate result of HomeAway's breaches of contract, Plaintiff has suffered, and will continue to suffer in the future, damages in an amount to be proven at trial, plus interest allowable under applicable law.

    75.    Plaintiff is entitled to an award of attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## SECOND CLAIM FOR RELIEF

### (Fraud)

### (On Behalf of Plaintiff and the Class)

76.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77.     Before Plaintiff renewed his subscription to HomeAway's websites on February 2, 2016, HomeAway repeatedly represented that booking vacation rentals through its sites was and would remain free to travelers.

78.     Those representations were either false when HomeAway made them or were made recklessly without knowledge of their truth.

   a.     No later than August 2012, HomeAway began looking for methods to increase its "take rate" (*i.e.*, HomeAway's revenues as a percentage of the total of all travelers' payments in connection with listings on HomeAway's web sites).  At that time, HomeAway's "take rate" was approximately 3%.  HomeAway sought to increase its "take rate" to at least 10%.  Among other things, HomeAway decided to increase its "take rate" by generating revenue from travelers as well as its subscribers, including, potentially, charging fees to travelers in connection with bookings made on its web sites.

   b.     By January 2014, despite knowing that imposing charges on travelers would make property listings on its sites less valuable to Plaintiff

and other owners who purchased subscriptions to post those property listings because of the reductions in bookings such charges would cause, HomeAway continued to consider ways to increase its "take rate," including, potentially, charging fees to travelers in connection with bookings made on its web sites.

c.      Throughout the period between February 2013 and August 2015, HomeAway's management and board of directors discussed and considered transitioning HomeAway's business model from the subscription-based "marketplace" model to a model that relied on both subscription and transaction-based revenue, including traveler fees.

d.      Those discussions and considerations accelerated during the second and third quarters of 2015, as HomeAway conducted financial analyses and constructed financial models of the impact switching to a transaction-based revenue model (including charging traveler fees) would have on its bottom line.

e.      By June 2015, HomeAway had either already decided to impose fees on travelers who booked properties through the listings on its web sites or knew that it was likely to do so.  Having experienced year-over-year declines in its earnings in each of the two prior quarters in large part because of significantly increased advertising spending, HomeAway knew that it needed to generate substantial additional revenue for itself and

considered traveler fees a viable method for doing so.

      f.     In anticipation of an August 20, 2015 meeting of the HomeAway board of directors, HomeAway's management prepared an operating plan to demonstrate how it proposed to implement the switch to a transaction-based revenue model (including charging traveler fees).

      g.     No later than September or early October 2015, HomeAway knew with certainty that it would charge fees to travelers when they rented properties through Plaintiff's and other Class members' subscription listings, and even shared its projections regarding how imposing such fees would affect its financial performance with other companies.

79.     Despite knowing these true facts, HomeAway made the false representations alleged herein with the intention that Plaintiff and the Class would rely upon them to purchase subscription listings.

80.     Those representations were material to Plaintiff and Plaintiff relied upon them, such that, had Plaintiff known that the representations were false, Plaintiff would have not renewed his subscription or would only have renewed his subscription at a lower price.  But Plaintiff did not know the true facts.

81.     Alternatively, HomeAway had an obligation to disclose, but failed to disclose, the true facts known to it that would have rendered its affirmative representations regarding being free to travelers and not charging fees to travelers not misleading.  Those undisclosed true facts were material, in that, had Plaintiff

and the Class known them, they either would not have purchased annual

subscription listings from HomeAway or would have paid less for those

subscription listings.

82.   HomeAway's misrepresentations and omissions have proximately

caused injury to Plaintiff and the Class in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF

### (Fraudulent Concealment)

### (On Behalf of Plaintiff and the Class)

83.   Plaintiff incorporates by reference the allegations in paragraphs 1

through 82, above as if fully set forth herein.

84.   HomeAway, in its marketing materials and website, represents to

owners that, "in traveler searches, results are initially ordered according to

subscription level" and that "within subscription levels, the order in which listings

appear is determined by our recently introduced best match system."

85.   HomeAway, in its marketing materials and website, also represents to

owners that vacation homes listed for rent by platinum-level subscribers will

appear in search results above vacation homes listed for rent by gold-level

subscribers, that vacation homes listed for rent by gold-level subscribers will

appear in search results above vacation homes listed for rent by silver-level

subscribers, that vacation homes listed for rent by silver-level subscribers will

appear in search results above vacation homes listed for rent by bronze-level

subscribers and that vacation homes listed for rent by bronze-level subscriber will appear in search results above vacation homes listed for rent by classic level subscribers.

86.     In addition to these annual subscriptions, HomeAway also offers owners a pay-per-booking option, which involves no annual subscription fee, but instead charges owners a commission equal to 8% of the booking cost.

87.     HomeAway, in its marketing materials and website, represents that pay-per-booking listings are listed in search results based solely upon "a combination of traveler preferences and the booking experience a listing provides."

88.     HomeAway nowhere discloses and, indeed, affirmatively conceals the true facts about these pay-per-booking listings:  namely (on information and belief) that HomeAway's search listing algorithm gives special weight to pay-per-booking listings, such that pay-per-booking listings appear higher in search results than they would if they were subscription listings.

89.     HomeAway and Plaintiff were, at all relevant times, in a contractual relationship such that HomeAway had a duty to disclose this omitted and concealed fact.

90.     That undisclosed and suppressed fact was material, such that had Plaintiff and the Class known that HomeAway's search listing algorithm gives extra weight and higher placement to pay-per-booking listings than to subscription-based listings, Plaintiff and the Class either would not have purchased annual

35

subscriptions from HomeAway or would have paid less for their subscriptions.

91.     At all relevant times, Plaintiff and the Class were ignorant of the undisclosed and suppressed information.

92.     HomeAway's failure to disclose the undisclosed and suppressed information has proximately caused injury to Plaintiff and the Class in an amount to be proved at trial.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Violation of Texas Deceptive Trade Practices Act, V.T.C.A. §17.41, *et seq.*)**

(**On Behalf of Plaintiff and the Class**)

93.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94.     On February 2, 2016, Plaintiff purchased goods and/or services consisting of (1) the visible listing of his vacation home on HomeAway's web sites, (2) advertising of Plaintiff's vacation home via HomeAway's web sites, (3) on line booking

95.     By means of its representations and conduct alleged herein, HomeAway engaged in the following false, misleading and/or deceptive acts and/or practices in the conduct of trade or commerce:

a.     HomeAway represented that its goods and/or services had characteristics and benefits which they do not have by falsely representing that owners who purchased subscriptions to its web sites would be able to

rent their vacation homes to travelers without those travelers incurring any fees to HomeAway.

b.      HomeAway represented that its goods and/or services had characteristics and benefits which they do not have by falsely representing that vacation home listings submitted by owners who purchased subscriptions to its web sites would appear above vacation home listings submitted by owners who did not purchase subscriptions to HomeAway's web sites.

c.      HomeAway advertised goods and/or services with intent not to sell them as advertised by representing that owners who purchased subscriptions to HomeAway's web sites would be able to rent their vacation homes to travelers without those travelers incurring any fees to HomeAway when, in fact, HomeAway knew at the time that it would, in fact, impose fees on travelers booking vacation homes through its web sites.

d.      HomeAway represented that the agreement between it and Plaintiff would confer or involve rights, remedies or obligations which it did not, in fact, convey or involve by falsely representing that owners who purchased subscriptions to its web sites would be able to rent their vacation homes to travelers without those travelers incurring any fees to HomeAway.

e.      HomeAway represented that the agreement between it and Plaintiff would confer or involve rights, remedies or obligations which it did

not, in fact, convey or involve by falsely representing that vacation home listings submitted by owners who purchased subscriptions to its web sites would appear above vacation home listings submitted by owners who did not purchase subscriptions to HomeAway's web sites.

      f.     HomeAway failed to disclose information concerning its goods and/or services which was known to HomeAway by failing to disclose that it intended to charge substantial fees to travelers booking vacation homes through its web sites.

      g.     HomeAway failed to disclose information concerning its goods and/or services which was known to HomeAway by failing to disclose that its search listing algorithm (on information and belief) gives special weight to pay-per-booking listings, such that pay-per-booking listings appear higher in search results than they would if they were subscription listings.

96.    HomeAway's conduct alleged herein was unconscionable in that HomeAway, by means of its conduct alleged herein, took advantage (to a grossly unfair degree and to Plaintiff's detriment) of Plaintiff's lack of knowledge that HomeAway would begin on February 9, 2016, to charge travelers fees for renting vacation homes through HomeAway's web sites.

97.    Plaintiff and the Class relied to their detriment on HomeAway's representations that it would not charge fees to travelers and/or relied to their detriment on the absence of any disclosure by HomeAway that it would begin on

February 9, 2016, to charge fees to travelers for renting vacation homes through HomeAway's web sites.

98.     Plaintiff and the Class relied to their detriment on HomeAway's representations that vacation home listings submitted by owners who purchased subscriptions to its web sites would appear above vacation home listings submitted by owners who did not purchase subscriptions to HomeAway's web sites and/or relied to their detriment on the absence of any disclosure by HomeAway that its search listing algorithm (on information and belief) gives special weight to pay-per-booking listings, such that pay-per-booking listings appear higher in search results than they would if they were subscription listings.

99.     HomeAway's use or employment of the false, misleading, deceptive and unconscionable acts and/or practices alleged herein constitute a producing cause of economic damages to Plaintiff and the Class in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, pray for judgment against defendants, and each of them jointly and severally, as follows:

1.     An Order certifying the plaintiff Class and appointing Plaintiff and his counsel to represent the Class;

2.     For damages in an amount to be proven at trial;

3.      For treble damages;

4.      For the declaratory, equitable, injunctive and/or monetary relief as appropriate for the particular causes of action;

5.      For pre- and post-judgment interest;

6.      For exemplary damages;

7.      For attorneys' fees and costs; and

8.      For such other and further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable and an advisory jury

for a factual determination on all equitable claims.

Respectfully submitted,

BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile:  (310) 275-5697

By:     /s/ *Michael A. Bowse*
        Michael A. Bowse *(Pro Hac Vice)*
        California Bar No. 189659
        mbowse@bgrfirm.com

Daniel H. Byrne
Texas State Bar No. 03565600
dbyrne@fbhf.com
FRITZ, BYRNE, HEAD & FITZPATRICK, PLLC
221 West 6th Street, Suite 960
Austin, Texas 78701
Telephone: (512) 476-2020
Facsimile:  (512) 477-5267

Attorneys for Plaintiff IVAN ARNOLD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of this **PLAINTIFF'S OPPOSITION TO HOMEAWAY INC.'S MOTION TO DISMISS** upon each attorney of record and the original upon the Clerk of the Court on October 13, 2017.

*/s/ Michael A. Bowse*

Michael A. Bowse *(Pro Hac Vice)*

# Terms and Conditions

*Last updated: September 15, 2015*

By using or accessing HomeAway.com, VRBO.com, GreatRentals.com, VacationRentals.com, CyberRentals.com, HomeAway.com.mx, HomeAway.ca, HomeAway.com.ar, HomeAway.com.co, software.HomeAway.com, InstantSoftware.com, Escapia.com, ClearStay.com, a subdomain of any such websites,  any mobile application for such websites or any other website operated by us on which these Terms and Conditions are posted via a link or otherwise (each referred to herein as a "Site"), you acknowledge that you agree to and are subject to the following terms and conditions, as well as our **Privacy Policy** (collectively, the "**Terms**"). If you do not fully agree to these Terms, Privacy Policy and any other terms and conditions posted or linked to any Site, you are not authorized to access or otherwise use the Site. Under these Terms, "**use**" or "**access**" of the Site specifically includes any direct or indirect access or use of the Site or any cached version of the Site and any direct or indirect access or use of any information or content on the Site, regardless of how obtained and the term "**Site**" includes, without limitation, any cached version thereof.

Each Site is operated by HomeAway.com, Inc. (a subsidiary of HomeAway, Inc.) or a subsidiary of HomeAway, Inc., as explained further under "General – HomeAway Corporate Entities" below. Unless otherwise specified, the entity controlling the Site you are accessing is referred to herein as "**HomeAway**," "**we**," "**us**" or "**our**".

You should read through all the Terms carefully. The Terms constitute a legally binding agreement between you and HomeAway.  You are not authorized to use this Site unless you are at least 18 and able to enter into legally binding contracts.  We do not knowingly collect the information of anyone under the age of 18.

If you arrived on the Site after having been re-directed or otherwise clicking on another website, you agree that these Terms shall govern your use of this Site.

**1.    The Site is a Venue and We are Not a Party to any Rental Agreement or other Transaction Between Users of the Site.**

We urge all users to be responsible about their use of this Site and any transaction entered into as a result of either listing a property or renting a property.  We do not own or manage, nor can we contract for, any vacation rental property listed on a Site. HomeAway.com and other Sites act as a venue to allow homeowners and property managers who advertise on the Site (each, a "**member**") to offer for rent in a variety of pricing formats, a specific vacation or short term rental property to potential renters (each, a "**traveler**" and, collectively with a member, the "**users**"). rent (also referred to as **users**" herein).  "Members" may also include property owners or managers who originally advertised their properties on another website and their listings have been redistributed on the Site. We also may offer online booking or other tools or services to allow users to communicate with each other and enter into rental agreements or other

transactions.

We are not a party to any rental or other agreement between users.  This is true even if the Site allows you to book a rental or provides other ancillary products or services, as the Site may facilitate booking a rental or other tools, services or products, but we are not a party to any rental or other agreement between users.

As a result, any part of an actual or potential transaction between a traveler and a member, including the quality, condition, safety or legality of the properties advertised, the truth or accuracy of the listings (including the content thereof or any review relating to any property), the ability of members to rent a vacation property or the ability of travelers to contract for properties are solely the responsibility of each user. You acknowledge and agree that you may be required to enter into one or more separate agreements, waivers or terms and conditions prior to making a booking or purchasing a product or service and may place additional restrictions on your booking, product or service.

Responsibility for applicable laws, rules and regulations:  Users agree that they are responsible for, and agree to abide by, all laws, rules and regulations applicable to their use of the Site, their use of any tool, service or product offered on the Site and any transaction they enter into on the Site or in connection with their use of the Site.

Members further agree that they are responsible for and agree to abide by all laws, rules and regulations applicable to the listing of their rental property and the conduct of their rental business, including but not limited to any and all laws, rules, regulations or other requirements relating to taxes, credit cards, data and privacy, taxes, permits or license requirements, zoning ordinances, safety compliance and compliance with all anti-discrimination and fair housing laws, as applicable. Please be aware that, even though we are not a party to any rental transaction and assume no liability for legal or regulatory compliance pertaining to rental properties listed on the Site, there may be circumstances where we are nevertheless legally obligated (as we may determine in our sole discretion) to provide information relating to your listing in order to comply with governmental bodies in relation to investigations, litigation or administrative proceedings, and we may choose to comply with or disregard such obligation in our sole discretion. Members who accept credit card, banking or other payment information from travelers agree to properly handle and safeguard all such information in accordance with applicable legal and regulatory requirements and best practices.

Travel Advisories:  Although most travel is completed without a serious incident, travel to some destinations may involve more risk than others.  We urge travelers to research the location they wish to visit and to review travel prohibitions, warnings, announcements and advisories issued by the United States Government prior to booking.  Information may be found at www.state.gov, www.tsa.gov, www.dot.gov, www.faa.gov, www.cdc.gov, www.treas.gov/ofac and www.customs.gov.

Warnings of Suspicious Activity:  While we do take certain measures with a goal to assist users to avoid potentially fraudulent or other illegal activity of which we become aware, we assume no

liability or obligation to take any such measures or actions.  When we provide warnings or messages to users about any such activity, we do not warrant that such messages are accurate or that such messages will reach any or all users they should have reached in a timely manner or at all or that such messages or measures will prevent any harm or otherwise have any impact.

**2.    Limited License to Use the Site.**

Users are granted a limited, revocable, non-exclusive license to access the Site and the content and services provided on the Site solely for the purpose of advertising a vacation or short term rental property, searching for a property, purchasing or researching (for the purpose of inquiring about purchasing) any of the products or services offered on any Site, participating in an interactive area hosted on any Site or for any other purpose clearly stated on a Site, all in accordance with the Terms.  Any use of the Site that is not for one of these purposes or otherwise in accordance with the Terms or as otherwise authorized by us in writing is expressly prohibited.

**3.    Unauthorized Uses of the Site.**

The license to use the Site only extends to the uses expressly described herein.  The license to use the site granted to users in these Terms does not include any right of collection, aggregation, copying, scraping, duplication, display or derivative use of the Site nor any right of use of data mining, robots, spiders or similar data gathering and extraction tools without our prior written permission; provided, however, that a limited exception from the foregoing exclusion is provided to general purpose internet search engines that use tools to gather information for the sole purpose of displaying hyperlinks to the Site, provided they each do so from a stable IP address or range of IP addresses using an easily identifiable agent and comply with our robots.txt  file.  "General purpose internet search engines" do not include a website or search engine or other service that provides classified listings or property rental advertisements, or any subset of the same or which is in the business of providing vacation property rental services or other services that compete with us.

Unauthorized uses of the Site also include, without limitation, those listed below.  You agree not to do any of the following, unless otherwise previously specifically agreed to by us:

- Any commercial use (other than by members with a fully paid up subscription in good standing (a "**valid subscription**") or by members pursuant to a valid license to software offered on a Site (a "**valid license**") of the Site or any content on the Site;
- Any use of the Site or the tools and services on the Site for the purpose of booking or soliciting a rental for a property other than a property listed under a valid subscription;
- Copy, reproduce, upload, post, display, republish, distribute, or transmit any part of the content in any form whatsoever;
- Reproduce any portion of the Site on your website or otherwise, using any device including, but not limited to, use of a frame or border environment around the Site, or other framing technique to enclose any portion or aspect of the Site, or mirror or replicate any portion of the Site;

- Deep-link to any portion of the Site without our express written permission;
- Modify, translate into any language or computer language, or create derivative works from, any content or any part of the Site;
- Reverse engineer any part of the Site;
- Sell, offer for sale, transfer, or license any portion of the Site in any form to any third parties;
- Use any robot, spider, scraper, other automatic device, or manual process to monitor, copy, or keep a database copy of the content or any portion of the Site;
- Use the Site and its inquiry functionality other than to advertise and/or research vacation rentals, to make legitimate inquiries to our members or any other use expressly authorized on the Site;
- Use the Site or post or transmit information that is in any way false, fraudulent, or misleading, including making any reservation or inquiry under false pretenses, or taking any action that may be considered phishing or that would give rise to criminal or civil liability;
- Post or transmit any unlawful, threatening, abusive, libelous, defamatory, obscene, vulgar, indecent, inflammatory, sexually explicit, pornographic or profane material;
- Violate, plagiarize or infringe the rights of us or third parties including, without limitation, copyright, trademark, patent, trade secrets, rights of publicity or privacy or any other intellectual or proprietary rights; or
- Use or access the Site in any way that, in our sole discretion, adversely affects or could adversely affect the performance or function of the Site or any other system used by us or the Site.

If you are aware of or experience any content, activity or communication through or in connection with the Site that appears to be in violation of the above restrictions, or in violation of any other provision of these Terms, we ask that you please inform us of any such violation by contacting us as set forth under "Contact Us" below.

**4.    Proprietary Rights and Downloading of Information from the Site.**

The Site and all content and information on the Site are protected by copyright as a collective work and/or compilation, pursuant to applicable U.S. and international copyright laws and conventions and database rights.  You agree to abide by any and all copyright notices, information, or restrictions contained in or relating to any content on the Site. Copying, storing or otherwise accessing the Site or any content on the Site for other than for your personal, noncommercial use (other than in accordance with a valid subscription) is expressly prohibited without prior written permission from us.

As part of the rental inquiry process, for your own personal, noncommercial use and not for further distribution, you may download, display, and/or print one copy of any portion of the Site. You may not modify the same, and you must reproduce our copyright notice in the form displayed on the relevant portion(s) of the Site that you desire to download, display or print.

**5.    Your E-mail Address and Data; Our Privacy Policy; Data Transmittal.**

When you provide your e-mail address, name or other information to us in connection with your use or access to the Site, any service or tool provided on the Site or otherwise, you agree to allow the Site and its affiliated websites to add your e-mail address, name or other information provided to our database of users. You may receive one or more promotional e-mails from either the Site or a website of one of HomeAway's affiliates. You are welcome to opt not to receive such promotional e-mails from the Site or such affiliates' websites at any time. Please review our Privacy Policy for more information regarding our email and other data collection practices and safeguards, and how to opt not to receive such emails. Your use of the Site signifies your acknowledgment of, and agreement, with our Privacy Policy.

Each user acknowledges and agrees that, regardless of such user's physical location, we may store and process any data transmitted to the Site from such user at locations both within and outside of the United States.

In the event that you use any of our tools that we may from time to time offer that integrate in any way with a third party website to which you have provided data or information, you acknowledge and agree that such third party website shall be responsible for how the data or information you have provided to such website is handled.

## 6. Identity Verification.

User verification on the Internet is difficult and we cannot, and do not assume any responsibility for, the confirmation of each user's purported identity. We encourage you to communicate directly with a traveler or member through the tools available on the Site, though even this does not assure you of the identity of the person with which you are communicating. We further encourage you to take other reasonable measures to assure yourself of the other person's identity and, for travelers, of the property and relevant details of your booking or proposed booking.

You agree to (i) keep your password and online ID for both your account with us and your email account secure and strictly confidential, providing it only to authorized users of your accounts, (ii) instruct each person to whom you give your online ID and password that he or she is not to disclose it to any unauthorized person, (iii) notify us immediately and select a new online ID and password if you believe your password for either your account with us or your email account may have become known to an unauthorized person, and (iv) notify us immediately if you are contacted by anyone requesting your online ID and password.  Further, if we suspect any unauthorized access to your account, upon our request, you agree to promptly change your ID and password and take any other related action as we may reasonably request.

We discourage you from giving anyone access to your online ID and password for your account with us and your email account.  However, if you do give someone your online ID and online password, or if you fail to adequately safeguard such information, you are responsible for any and all transactions that the person performs while using your account with us or your email account, even those transactions that are fraudulent or that you did not intend or want performed.

EACH USER ACKNOWLEDGES AND AGREES THAT: (1) NEITHER HOMEAWAY NOR

ANY OF ITS AFFILIATES WILL HAVE ANY LIABILITY TO ANY USER FOR ANY UNAUTHORIZED TRANSACTION MADE USING ANY USER'S ID OR PASSWORD; AND (2) THE UNAUTHORIZED USE OF YOUR ONLINE ID AND PASSWORD FOR YOUR HOMEAWAY ACCOUNT OR YOUR EMAIL ACCOUNT COULD CAUSE YOU TO INCUR LIABILITY TO BOTH HOMEAWAY AND OTHER USERS.  Further, we may, without notice to you, suspend or cancel your listing at any time even without receiving notice from you if we suspect, in our sole discretion, that your account with us or your email account is being used in an unauthorized or fraudulent manner.

**7.    Limitations on Communications and Use of Other Users' Information; No Spam.**

You agree that, with respect to other users' personal information that you obtain directly or indirectly from or through the Site or through any Site-related communication, transaction or software, we have granted to you a license to use such information only for: (a) Site-related communications that are not unsolicited commercial messages, (b) using services offered through the Site, and (c) inquiring about or otherwise facilitating a financial transaction between you and the other user related to the purpose of the Site (such as inquiring about or booking an online booking or charging a personal credit card). Any other purpose will require express permission from the user.  You may not use any such information for any unlawful purpose or with any unlawful intent.

In all cases, you must give users an opportunity to remove their information from your address book or database or other records and a chance to review what information you have collected about them. In addition, under no circumstances, except as defined in this provision, may you disclose personal information about another user to any third party without both our consent and the consent of the other user. You agree that other users may use your personal information to communicate with you in accordance with this provision. Further, you agree that you will protect other users' personal information with the same degree of care that you protect your own confidential information (using at minimum a reasonable standard of care), and you assume all liability for the misuse, loss, or unauthorized transfer of such information.

We do not tolerate spam or unsolicited commercial electronic communications of any kind. Therefore, without limiting the foregoing, you are not licensed to add a Site user, even a user who has rented a vacation property from you or to you, to your mailing list (email or physical mail) without the user's express consent. You may not use any tool or service on the Site to send spam or unsolicited commercial electronic communications of any kind or in any other way that would violate these Terms.  You are responsible for all content you provide to the Site or through any tool or service provided on the Site.

**8.    Responsibility for Property Listings, Reviews and Other User contributed Content; Participation in Interactive Forums.**

We have no duty to pre-screen content posted on the Site by members, travelers or other users, whether directly contributed by the user or contributed by us or a third party on behalf of the user (including, without limitation, property listings, reviews of a rental property, participation in an interactive community, forum or blog (each an "**Interactive Forum**") or any other content

provided by a user to the Site), (collectively, "**user contributed content**").  We are not responsible for user contributed content. "**User contributed content**" also includes information that a user or any other person provided to a third party website or mobile application which is then provided to our Site by a tool we offer or any other exchange of user contributed content we have authorized.

We reserve the right to decline to permit the posting on the Site of or to remove from the Site any user contributed content that fails to meet our Content Guidelines, any other guidelines posted on a Site or if it otherwise violates these Terms, each as determined in our discretion. We may also remove user contributed content if it is brought to our attention, such as by notice given to us by a user or any third party that any part of these Terms, or any other requirements governing the posting of such content, has/have been apparently breached in respect of such content, as determined in our consent.  Finally, we reserve the right, but do not assume the obligation, to edit a member's content or user contributed content in a non-substantive manner solely to cause the content to comply with our content guidelines or formatting requirements or to provide services to members to create or improve on listings (such as translation services), in accordance with information we have about the property listed.  Users remain responsible for reviewing their user-contributed content to ensure it is accurate and not misleading.

At a minimum, user contributed content must (as determined by us in our discretion):

- not infringe anyone's rights, violate the law or otherwise be inappropriate;
- not include personal information of another that can be used to identify or contact any person;
- not include unsolicited promotional content, advertising, political campaigns, contests, raffles or solicitations;
- be directly related to the Site, business service, product or forum where the content is submitted;
- not be obscene, abusive, discriminatory or illegal content; or
- not be false or misleading.

Property Listings: All property listings on the Site are the sole responsibility of the member (who may be the owner or a property manager or duly authorized property manager or agent of the owner) and we specifically disclaim any and all liability arising from the alleged accuracy of the listings, reviews, or any alleged breaches of contract on a user's part.  Members are solely responsible for keeping their property information up-to-date on the Site, including, but not limited to any and all representations about any property, its amenities, location, price, and its availability for a specific date or range of dates. We do not represent or warrant that any of the copy, content, property reviews, guest book entries, property location, suitability, pricing or availability information published on the Site is accurate or up-to-date even in the case where prospective travelers have searched for specific special offers, dates, or types of properties. We may from time to time provide or facilitate services to Members to create or improve the quality of their property listings.  We also may from time to time create new or otherwise change the location or geographic descriptions we use to identify properties in their listings and search results.  Consequently, we may change the location or geographic description associated with any property listing at any time without notice.  However, we assume no responsibility to verify

property listing content or the accuracy of the location. Members are solely responsible for ensuring the accuracy of location, geographic and other content and location or geographic descriptions and agree to promptly correct (or contact us to correct) any inaccuracy and travelers are solely responsible for verifying the accuracy of such content and descriptions.

Responsibility for All Other User Contributed Content: All other user contributed content is the sole responsibility of the user who contributed such content, whether such user contributed the content directly or through a third party website.  Users are solely responsible for their user contributed content and we specifically disclaim all liability for user contributed content.

The user represents and warrants that the user owns or otherwise controls and have all legal rights to the user's submission and the name or other identifier used in connection with such submission including, but not limited to, all the rights necessary to provide, post, upload, input or submit the user contributed content. We reserve the right to request a proof of ownership or permission, and to refuse to post user generated content without such proof or if such proof is, in our sole discretion, insufficient.

License and Rights Granted to Us: By submitting or authorizing user contributed content, you grant to us and our affiliates a perpetual, worldwide, irrevocable, unrestricted, non-exclusive, royalty-free and fully paid-up license to use, copy, license, sublicense (through multiple tiers), adapt, distribute, display, publicly perform, reproduce, transmit, modify, edit and otherwise exploit the copy, the photographs and the likenesses (if any) of any of your user contributed content, in connection with our business or the business of our affiliates.   Notwithstanding the foregoing, following the termination or expiration of a property listing subscription, we will not continue to display the user contributed content that was displayed in such listing.

You further grant us and our affiliates the ability to copyright and protect the user contributed content, including the images, copy, and content available via any member's listing, from the unauthorized use by unaffiliated third parties who may, from time to time, attempt to pirate such information via electronic or other means.  This includes, but is not limited to, the right to file suit to seek injunctive relief to protect such material.  You further agree to assist us—at our expense and control—to protect such copyrighted material from unauthorized redistribution.

You agree that we may sublicense all the rights granted to us under these Terms to one or more third parties we may contract with to display all or part of the member's property listing or otherwise provide promotional or other services related to our business.

Further, each member agrees that we may reproduce in whole or in part any photographic material supplied by such member in the promotion of either such member's property or the promotion of the Site.

In the event that it is determined that you retain any rights of attribution, integrity or any other moral rights in any user contributed content, you hereby declare that you do not require that any personally identifying information be used in connection with the user contributed content or any derivative works thereof and that you have no objection to the publication, use, modification, deletion or exploitation of the user contributed content by us or our affiliates.

Privacy Policy:  We adhere to strong principles of privacy. You agree that we may access and use your user contributed content in accordance with these Terms or our Privacy Policy and we agree that we will only disclose your user contributed content in accordance with these Terms and our Privacy Policy.

## 9. Social Media or Third Party Websites.

If the Site offers a tool or service which allows us to access or use any profile or other information about you that you have provided to Facebook or another third party website (each a "**Social Media Site**") and you decide to use such a tool or service, you acknowledge and agree that:

(i)     The information or content that are a part of your Social Media Site profile, which you have designated as "public" (or a similar designation) (with such information or content and referred to herein as "**Social Media Content**") may be accessed and used by us in connection with the Site;

(ii)   The Social Media Content will be considered "user generated content" under these Terms and both you and we shall have the same rights and responsibilities as you and we have with respect to user generated content under these Terms;

(iii)    In the event that the Social Media Content was for any reason misclassified with a public or similar designation or is otherwise inaccurate or to which you do not agree with for any reason, you agree to work with the Social Media Site to make any changes or resolve any disputes and acknowledge that we will not be able to provide you with recourse; and

(iv)    The operation of your profile and account with and on the Social Media Site shall continue to be governed by the terms and conditions and privacy policy of such Social Media Site.

## 10. Translations and Maps.

If any user contributed content created by members or users is translated for display on any Site or any site of any affiliate of HomeAway, we cannot guarantee the accuracy or quality of such translation and the member or user is solely responsible for the review, verification and accuracy of such translation.  Unless we specify otherwise to the user or member, any translation services are offered by us free of charge.
Maps provided on the Site that are provided by Google are subject to the Google Maps terms and conditions located at: http://www.google.com/intl/en_us/help/terms_maps.html.

## 11.  Notification of Infringement; DMCA Policy.

We respect the intellectual property rights of others, and HomeAway does not permit, condone, or tolerate the posting of any content on the Site that infringes any person's

copyright.  HomeAway will terminate, in appropriate circumstances, a member or traveler who is the source of repeat infringements of copyright. Should you become aware of or suspect any copyright infringement on this Site, please refer to our procedures for Notification of Copyright Infringement.

**12.    Unsolicited Ideas and Feedback.**

Unsolicited Ideas:  From time to time, users submit to us ideas or suggestions pertaining to our business, such as ideas for new or improved products or technologies, website or tool enhancements, processes, materials, marketing plans or new product names.  We  are under no obligation to review or consider them. If you choose to submit any ideas, original creative artwork, suggestions or other works ("**submissions**") in any form to us, then regardless of what you say, write or provide to us in connection with your submissions, the following terms shall apply.

The sole purpose of this policy is to avoid potential misunderstandings or disputes in the event that any part of our business, such as our products, websites, technologies or marketing strategies, seem similar to any of your submissions. If you provide any submissions to us, you agree that: (1) your submission and its contents will automatically become the property of HomeAway, without any compensation to you; (2) HomeAway may use or redistribute any such submission and its contents for any purpose and in any way; (3) there is no obligation for HomeAway to review any submission; and (4) there is no obligation to keep any submission confidential.

Feedback on our Business:  We welcome your feedback regarding many areas of our business. If you want to send us your feedback, we simply request that you send it to us using the links under "General – Contact Us" below or you can choose from the many other listed areas for your feedback. Please provide only specific feedback on our websites and services.  Keep in mind that we assume no obligation to keep any feedback you provide confidential and we reserve the right to use or disclose such information in any manner.

To provide feedback, you can contact us as provided under "Contact Us" below.

**13. Software Available on the Site.**

The Site is controlled and operated by HomeAway or an affiliate of HomeAway in the United States.  Software available on the Site (the "Software") is subject to United States export controls.  No Software available on the Site or software available any other site operated by HomeAway or an affiliate of HomeAway in the United States may be downloaded or otherwise exported or re-exported (a) into (or to a resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria or any other country to which the United States has embargoed goods, or (b) anyone on the United States Treasury Department's list of Specially Designated Nationals or the United States Commerce Department's Table of Deny Orders.  By using the Site, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

All Software is the copyrighted work of HomeAway, an affiliate of HomeAway or an identified third party.  Your use of such Software is governed by these Terms and the terms of any additional license agreement that accompanies or is included with such Software.  If the Software is not accompanied by an additional license agreement, we hereby grant you a limited, personal, nontransferable license to use the Software for viewing and using this Site in accordance with these Terms and for no other purpose.

THE SOFTWARE IS WARRANTED, IF AT ALL, ONLY ACCORDING TO THE TERMS OF THE LICENSE AGREEMENT ACCOMPANYING SUCH SOFTWARE.  COPYING OR REPRODUCING ANY SOFTWARE AVAILABLE ON THIS SITE IS EXPRESSLY PROHIBITED, EXCEPT AS SPECIFICALLY PROVIDED FOR IN A LICENSE AGREEMENT ACCOMPANYING SUCH SOFTWARE.

**14.    Links to Third Party Sites.**

This Site may contain links and pointers to other Internet sites, resources, and sponsors of the Site. Links to and from the Site to other third-party sites, maintained by third parties, do not constitute an endorsement by us of any third parties, the third-party sites or the contents thereof.  We may also provide tools to allow interaction between the Site and a third party site, such as a Social Media Site. We are not responsible in any way for such third-party sites or resources and your use of such sites and resources will not be governed by these Terms.

**15.    Limitation of Liability.**

**IN NO EVENT WILL HOMEAWAY, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, CONSULTANTS, AGENTS AND/OR EMPLOYEES (COLLECTIVELY, THE "HOMEAWAY GROUP"),  OR ANY THIRD PARTY PROVIDER OF A SERVICE OR TOOL OFFERED ON ANY SITE OF A MEMBER OF THE HOMEAWAY GROUP (EACH A "THIRD PARTY PROVIDER"), BE LIABLE FOR ANY LOST PROFITS OR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF, BASED ON, OR RESULTING FROM (A) OUR SITE, (B) THESE TERMS, (C) ANY BREACH OF THESE TERMS BY YOU OR A THIRD PARTY, (D) USE OF THE SITE, TOOLS OR SERVICES WE PROVIDE, OR ANY THIRD PARTY PROVIDER PROVIDES, RELATED TO THE BUSINESS WE OPERATE ON THE SITE, BY YOU OR ANY THIRD PARTY (E) ANY USER CONTRIBUTED CONTENT, (F) INTERACTION BETWEEN OUR SITE AND ANY THIRD PARTY SITE, INCLUDING WITHOUT LIMITATION A SOCIAL MEDIA SITE, FACILITATED BY A TOOL OR SERVICE ON OUR SITE AND/OR (G) ANY ACTUAL OR ATTEMPTED COMMUNICATION OR TRANSACTION, INCLUDING WITHOUT LIMITATION, ANY PAYMENT TRANSACTION (EVEN IF WE OR ANY THIRD PARTY PROVIDER RECEIVE A COMMISSION OR FEE IN CONNECTION THEREWITH) BETWEEN USERS, IN EACH CASE, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  THESE LIMITATIONS AND EXCLUSIONS APPLY WITHOUT REGARD TO WHETHER THE DAMAGES ARISE FROM (1) BREACH OF CONTRACT, (2) BREACH OF WARRANTY, (3) STRICT LIABILITY, (4) TORT, (5) NEGLIGENCE, OR (6) ANY OTHER CAUSE OF ACTION,**

TO THE MAXIMUM EXTENT SUCH EXCLUSION AND LIMITATIONS ARE NOT PROHIBITED BY APPLICABLE LAW.

IF YOU ARE DISSATISFIED WITH THE SITE, YOU DO NOT AGREE WITH ANY PART OF THE TERMS, OR HAVE ANY OTHER DISPUTE OR CLAIM WITH OR AGAINST US, ANY THIRD PARTY PROVIDER OR ANY USER OF THE SITE WITH RESPECT TO THESE TERMS OR THE SITE, THEN YOUR SOLE AND EXCLUSIVE REMEDY AGAINST US IS TO DISCONTINUE USING THE SITE. IN ALL EVENTS, OUR LIABILITY, AND THE LIABILITY OF ANY MEMBER OF THE HOMEAWAY GROUP, TO YOU OR ANY THIRD PARTY IN ANY CIRCUMSTANCE ARISING OUT OF OR IN CONNECTION WITH THE SITE IS LIMITED TO THE GREATER OF (A) THE AMOUNT OF FEES YOU PAY TO US IN THE TWELVE MONTHS PRIOR TO THE ACTION GIVING RISE TO LIABILITY OR (B) $100.00 IN THE AGGREGATE FOR ALL CLAIMS.

16.   Disclaimers.

THE SITE, INCLUDING ALL CONTENT, SOFTWARE, FUNCTIONS, MATERIALS AND INFORMATION MADE AVAILABLE ON OR ACCESSED THROUGH THE SITE, IS PROVIDED "AS IS." TO THE FULLEST EXTENT PERMISSIBLE BY LAW, WE MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER FOR THE CONTENT ON THE SITE OR THE MATERIALS, INFORMATION AND FUNCTIONS MADE ACCESSIBLE BY THE SOFTWARE USED ON OR ACCESSED THROUGH THE SITE, FOR ANY PRODUCTS OR SERVICES OR HYPERTEXT LINKS TO THIRD PARTIES OR FOR ANY BREACH OF SECURITY ASSOCIATED WITH THE TRANSMISSION OF SENSITIVE INFORMATION THROUGH THE SITE OR ANY LINKED SITE, EVEN IF WE BECOME AWARE OF ANY SUCH BREACHES. FURTHER, WE EXPRESSLY DISCLAIM ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING, WITHOUT LIMITATION, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ACCURACY. WE DO NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE SITE OR ANY MATERIALS OR CONTENT CONTAINED THEREIN WILL BE UNINTERRUPTED OR ERROR FREE, THAT DEFECTS WILL BE CORRECTED, OR THAT THE SITE OR THE SERVER THAT MAKES IT AVAILABLE IS FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

YOU ACKNOWLEDGE AND AGREE THAT ANY TRANSMISSION TO AND FROM THIS SITE IS NOT CONFIDENTIAL AND YOUR COMMUNICATIONS OR USER CONTRIBUTED CONTENT MAY BE READ OR INTERCEPTED BY OTHERS. YOU FURTHER ACKNOWLEDGE AND AGREE THAT BY SUBMITTING COMMUNICATIONS OR USER CONTRIBUTED CONTENT TO US AND BY POSTING INFORMATION ON THE SITE, INCLUDING PROPERTY LISTINGS, NO CONFIDENTIAL, FIDUCIARY, CONTRACTUALLY IMPLIED OR OTHER RELATIONSHIP IS CREATED BETWEEN YOU AND US OTHER THAN PURSUANT TO THESE TERMS.

**YOU ACKNOWLEDGE AND AGREE THAT YOU WILL NOT HOLD OR SEEK TO HOLD US OR ANY THIRD PARTY PROVIDER RESPONSIBLE FOR THE CONTENT PROVIDED BY ANY USER, INCLUDING, WITHOUT LIMITATION, ANY TRANSLATION THEREOF, AND YOU FURTHER ACKNOWLEDGE AND AGREE THAT WE ARE NOT A PARTY TO ANY RENTAL TRANSACTION OR OTHER TRANSACTION BETWEEN USERS OF THE SITE. WE HAVE NO CONTROL OVER AND DO NOT GUARANTEE (OTHER THAN PURSUANT TO ANY GUARANTEE THE MAY BE OFFERED ON THE SITE) THE SAFETY OF ANY TRANSACTION, RENTAL PROPERTY OR THE TRUTH OR ACCURACY OF ANY LISTING OR OTHER CONTENT PROVIDED ON THE SITE.**

**YOU FURTHER ACKNOWLEDGE THAT BY DISPLAYING INFORMATION OR PROPERTY LISTINGS IN PARTICULAR DESTINATIONS, WE DO NOT REPRESENT OR WARRANT THAT TRAVEL TO SUCH DESTINATIONS IS WITHOUT RISK AND ARE NOT LIABLE FOR DAMAGES WITH RESPECT TO TRAVEL TO ANY DESTINATION.**

17.   **Release; Indemnification.**

**IN THE EVENT THAT YOU HAVE A DISPUTE WITH ONE OR MORE OTHER USERS OF THE SITE (INCLUDING, WITHOUT LIMITATION, ANY DISPUTE BETWEEN USERS REGARDING ANY TRANSACTION OR USER CONTRIBUTED CONTENT) OR ANY THIRD PARTY PROVIDER OR ANY THIRD PARTY WEBSITE THAT MAY BE LINKED TO OR FROM OR OTHERWISE INTERACT WITH THE SITE, INCLUDING WITHOUT LIMITATION ANY SOCIAL MEDIA SITE, YOU HEREBY AGREE TO RELEASE, REMISE AND FOREVER DISCHARGE EACH MEMBER OF THE HOMEAWAY GROUP, EACH OF THEIR RESPECTIVE AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, AND ALL OTHER RELATED PERSONS OR ENTITIES FROM ANY AND ALL MANNER OF RIGHTS, CLAIMS, COMPLAINTS, DEMANDS, CAUSES OF ACTION, PROCEEDINGS, LIABILITIES, OBLIGATIONS, LEGAL FEES, COSTS, AND DISBURSEMENTS OF ANY NATURE WHATSOEVER, WHETHER KNOWN OR UNKNOWN, WHICH NOW OR HEREAFTER ARISE FROM, RELATE TO, OR ARE CONNECTED WITH SUCH DISPUTE AND/OR YOUR USE OF THE SITE.**

**IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE SECTION 1542, WHICH SAYS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HI S SETTLEMENT WITH THE DEBTOR."**

**YOU HEREBY AGREE TO INDEMNIFY, DEFEND AND HOLD EACH MEMBER OF THE HOMEAWAY GROUP (COLLECTIVELY, THE "INDEMNIFIED PARTIES") HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY AND COSTS INCURRED BY THE INDEMNIFIED PARTIES IN CONNECTION WITH ANY CLAIM**

ARISING OUT OF YOUR USE OF THE SITE OR OTHERWISE RELATING TO THE
BUSINESS WE CONDUCT ON THE SITE (INCLUDING, WITHOUT LIMITATION,
ANY POTENTIAL OR ACTUAL COMMUNICATION, TRANSACTION OR DISPUTE
BETWEEN YOU AND ANY OTHER USER OR THIRD PARTY), ANY CONTENT
POSTED BY YOU OR ON YOUR BEHALF OR POSTED BY OTHER USERS OF YOUR
ACCOUNT TO THE SITE, ANY USE OF ANY TOOL OR SERVICE PROVIDED BY A
THIRD PARTY PROVIDER, ANY USE OF A TOOL OR SERVICE OFFERED BY US
THAT INTERACTS WITH A THIRD PARTY WEBSITE, INCLUDING WITHTOUT
LIMITATION ANY SOCIAL MEDIA SITE OR ANY BREACH BY YOU OF THESE
TERMS OR THE REPRESENTATIONS, WARRANTIES AND COVENANTS MADE
BY YOU HEREIN, INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND
COSTS. YOU SHALL COOPERATE AS FULLY AS REASONABLY REQUIRED IN
THE DEFENSE OF ANY CLAIM.

WE RESERVE THE RIGHT, AT OUR OWN EXPENSE, TO ASSUME THE
EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT
TO INDEMNIFICATION BY YOU AND YOU SHALL NOT IN ANY EVENT SETTLE
ANY MATTER WITHOUT OUR WRITTEN CONSENT.

**18.    Jurisdiction; Choice of Law and Forum; Time Limit.**

THIS SITE IS OPERATED BY US IN THE UNITED STATES AND WE MAKE NO
WARRANTY THAT THE MATERIALS AND CONTENT ON THE SITE ARE
APPROPRIATE OR AVAILABLE FOR USE OUTSIDE OF THE UNITED
STATES.  THOSE WHO CHOOSE TO ACCESS THE SITE FROM OUTSIDE THE
UNITED STATES DO SO ON THEIR OWN INITIATIVE AND ARE RESPONSIBLE
FOR LOCAL LAWS, IF AND TO THE EXTENT THAT LOCAL LAWS ARE
APPLICABLE.

ANY AND ALL SERVICES AND RIGHTS OF USE HEREUNDER ARE PERFORMED,
PERFORMABLE AND/OR SOLD IN THE STATE OF TEXAS, UNITED STATES OF
AMERICA, AND YOU IRREVOCABLY AGREE AND CONSENT THAT ANY CAUSE
OF ACTION YOU MAY SUBMIT IN CONNECTION WITH YOUR USE OF THE SITE
OR PURSUANT TO THESE TERMS WILL BE FILED IN THE STATE OR FEDERAL
COURTS IN TRAVIS COUNTY, TEXAS WHICH YOU ACKNOWLEDGE, CONSENT
TO AND AGREE WILL BE THE EXCLUSIVE FORUM AND VENUE FOR ANY
LEGAL DISPUTE BETWEEN YOU AND US. YOU ALSO AGREE THAT ANY
DISPUTE BETWEEN YOU AND US WILL BE GOVERNED BY THE LAWS OF THE
STATE OF TEXAS, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

ANY CAUSE OF ACTION YOU MAY HAVE HEREUNDER OR WITH RESPECT TO
YOUR USE OF THE SITE MUST BE COMMENCED BY FILING SUIT IN TRAVIS
COUNTY, TEXAS, WITHIN ONE (1) YEAR AFTER THE INCIDENT UPON WHICH
THE CLAIM OR CAUSE OF ACTION IS BASED FIRST OCCURRED.

**19. Additional Terms and Conditions Applicable to Online Booking.**

Use of Reservation Manager or other Online Booking Tools We Offer on our Sites.  In addition to being bound by the other terms set forth herein, Users and Members who use ReservationManager™ or any other tool provided by us or a third party provider on our Site enabling users to book and/or pay for the rental of properties online on one or more of our Sites (collectively, the "**Booking Services**") are also bound by the following terms, which are in addition to any other terms applicable in connection with using our Site.  In addition, if such Booking Services include payment or other services provided by a third party provider, such services are subject to the additional terms and conditions and privacy policies of such third party providers.

Booking Services.  We provide Booking Services to manage inquiries, quotes, rental agreements and allow for payments to be made relating to the rental.  Please review the following terms and the terms and conditions of any third party provider carefully. If you do not agree to these or such third party provider's terms, you have no right to obtain information from or otherwise continue using our Booking Services. Failure to use our Booking Services in accordance with the following terms of use may subject you to severe civil and criminal penalties and other liability.

Rental Agreement.  By utilizing a rental agreement as part of the Booking Services or otherwise displaying terns relating to the rental as part of the online booking process (including such terms that we may require), the user (as "**Guest**") and member (as "**Owner**") each agree to the terms and conditions set forth in the rental agreement or other such terms displayed in the booking process (including without limitation the cancellation refund policy) effective as of the date that the user indicates acceptance of the booking or rental agreement, as applicable. You hereby acknowledge and agree that (a) you are  fully responsible for such terms and conditions, (b) any rental agreement used, whether a sample provided by the Site or a rental agreement copied and pasted in ReservationManager (or other online booking tool on the Site) by either party, is used solely at their own risk and expense, (c) nothing contained in the Booking Services, this Agreement, or any sample rental agreement is a substitute for the advice of an attorney, and (d) that you have been hereby advised to obtain local legal counsel to prepare, review and revise as necessary any rental agreements to ensure compliance with federal, state, and local law and their particular circumstances, and to revise the rental agreement as necessary to accurately represent their property, rules, features, etc.

Terms Applicable to Use of Booking Services or Third Party Online Booking Services.

Third Party Booking Services Software.  There are some Members, typically property managers, who use software provided by our affiliate, HomeAway Software, or a third party. Such software ("**Other Booking Services**") may be governed by terms provided by the third parties or Members making such Other Booking Services available.  Users who use such Third Party Booking Services are responsible for complying with such terms in addition to our Terms, including, but not limited to the following.

Timing of Acceptance of Booking Requests and Payment Processing Applicable to Property Managers and Other Members Using Online Booking.  Members who are property managers and other members who use our online booking tools agree to use commercially reasonable efforts to respond to all booking requests from travelers within 24 hours of receipt of a request for

booking.  Such Members further agree to take commercially reasonable efforts to cause all traveler payments to be processed within 24 hours of authorization by the traveler for such payment.

Property Damage Protection.   By utilizing and/or purchasing Property Damage Protection you agree to the terms and conditions under the Property Damage Protection plan, acknowledge that you understand that certain policy restrictions apply, and agree that Property Damage Protection may be included in the rental. You further acknowledge and agree that (a) although the Property Damage Protection policy will pay a maximum benefit up to the policy limit, you remain fully responsible for the care and condition of the property and for any damage to the  property, (b) you remain fully responsible for any damages that are not covered by the policy or that exceed the policy limits, (c) if during you stay at the vacation rental (if applicable) you, as the insured person under the Property Damage Protection plan, causes any damage to real or personal property of the member as a result of inadvertent acts or omissions, you will be responsible for the cost of repair or replacement of such property and hereby authorize and request CSA Travel Protection and Insurance Services to pay directly the Member any amount payable under the terms and conditions of the Property Damage Protection plan up to a maximum benefit of the policy limit.  Full details of the Property Damage Protection coverage are contained in the Description of Coverage https://www.propertydamageprotection.com/pdf/100HADoc.pdf.  Members further acknowledge and agree that they will choose the plan level with the appropriate level of coverage needed for each property and that they will offer that same plan level to all Users agreeing to rent this property.

Carefree Rental Guarantee.   By utilizing and/or purchasing Carefree Rental Guarantee you agree to the terms and conditions of the Carefree Rental Guarantee found here: http://guarantee.homeaway.com/tac.

Cancellation Protection.  By utilizing and/or purchasing Cancellation Protection you agree to the terms and conditions under the plan and acknowledge that User understands that certain policy restrictions apply. Full details of the Cancellation Protection coverage are contained in the Description of Coverage http://www.csatravelprotection.com/certpolicy.do?productclass=G-330CSA.

**20.  Responsibility for Property and Traveler Liability**.  We do not provide liability insurance protection for owners, property managers, or travelers; regardless of whether a user obtains insurance coverage through one of our third party providers. Users are solely responsible for obtaining insurance coverage sufficient to protect their properties and guests or their trip, as applicable.  Members agree that they have or will obtain the appropriate insurance coverage sufficient to cover the rental of the properties they list on the Site prior to the arrival of their first traveler and will maintain adequate insurance coverage through the departure date of any traveler they have obtained via one of our Sites. Further, Members agree to provide us with copies of relevant proof of coverage upon request.

**21.   GENERAL**

Contact Us:  To contact us for any reason, users can visit help.homeaway.com.

HomeAway Corporate Entities:  The following Sites are operated by the following Subsidiaries of HomeAway, Inc., a Delaware corporation.

HomeAway.com, VRBO.com and VacationRentals.com, and any subdomains thereof, are operated by HomeAway.com, Inc., a Delaware corporation.

Software/HomeAway.com, InstantSoftware.com, Escapia.com, ClearStay.com and HomeAwaySoftware.com, and any subdomains thereof, are operated by HomeAway Software, Inc., as of December 31, 2011 and prior to such date, InstantSoftware.com was operated by Instant, Inc. and Escapia.com and ClearStay.com were operated by Escapia, Inc.

Your agreement to abide by these Terms, the Privacy Policy and any other terms posted on any Site, with respect to any Site you use, is between you and the entity listed above operating such Site.

No Agency:  Our relationship is that of independent contractors, and no agency, partnership, joint venture, employee-employer or franchiser-franchisee relations is intended or created by these Terms or your use of the Site.

Notices:  Except as explicitly stated otherwise, any notices to us shall be given by postal mail to:

HomeAway.com, Inc., Attn: Legal Department, 1011 W. Fifth Street, Suite 300, Austin, Texas 78703

When we need to send you notice, it will be sent to the email address you provide to the Site during the registration process or as later updated in your account (if applicable). Notice shall be deemed given upon receipt or 24 hours after an email is sent, unless the sending party is notified that the email address is invalid. Alternatively, we may give you notice by certified mail, postage prepaid and return receipt requested, to any physical or electronic address provided to us during the registration process or as later updated in your account (if applicable). In such case, notice shall be deemed given three days after the date of mailing to a physical address and one day after mailing to an electronic address.

Changes to the Site or these Terms and Conditions:  We may change, suspend or discontinue any aspect of the Site at any time, including the availability of any Site features, database, or content. We may also impose limits on certain features or services or restrict your access to parts or the entire Site without notice or liability.

This version of the Terms became effective on the date set forth above and this version amends the version effective prior to such date.  We reserve the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge

and agree that your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature. Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms and will be effective immediately.  If you disagree with any non-clerical and/or substantive amendment to these Terms, then (i) your sole remedy as a traveler, or any other user other than a member, is to discontinue your use of the Site, and (ii) your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment and you agree that you are responsible for keeping a copy of such terms.  When members renew subscriptions, the terms in effect at the time of renewal will govern, provided that such terms may change as described above.

We also reserve the right, in our sole discretion and from time to time, to offer programs, products or services with unique terms and conditions that are separate from and may supersede or supplement in certain respects these Terms.  In such cases, your use of the Site with respect to such special program is governed by these Terms together with the terms and conditions of such program, product or service.

We reserve the right, but assume no obligation, to agree to different or conflicting terms and conditions with respect to any user. Any such terms and conditions will not be enforceable unless specifically agreed to by us.

Subscription rates and fees (including any commissions) charged for any listing that is not subscription based (such as pay-per-booking or pay-per-lead) are set at the time of a user or member's purchase of the subscription or renewal or sign up for the non-subscription based, listing, as applicable.  Such rates and fees are subject to change without notice or approval.  For subscription listings, the rates in effect at the time of the member's next subscription renewal, new listing or a member's upgrade or any other additional or new order of any product or service will govern for such renewal or other order.  The fees and commissions applicable to pay-per-booking listings offered on one or more Sites will be displayed under the "List Your Property" tab when such product is generally made available on a Site or shall be otherwise set forth in a communication between us and the member.

The types of products and services (including the features, terms and operation thereof) offered at the time of a member's subscription or sign up for a non-subscription based listing are subject to the descriptions displayed at the time of use and/or purchase and are subject to change without notice or approval.   We further reserve the right to offer additional products, services or features for purchase at any time.  See also the section below relating to auto renewal of subscriptions.

Your Record of These Terms:  We do not separately file the Terms entered into by each user of the Site. Please make a copy of these Terms for your records by printing and/or saving a downloaded copy of the Terms on your personal computer.

Enforcement of These Terms:  We may immediately terminate any user's access to or use of the

Site due to such user's breach of these Terms or any other unauthorized use of the Site.  However, we do not guarantee that we will take action against all breaches of these Terms.  Our failure to take immediate action with respect to a breach by you or others does not waive our right to act with respect to such breach or any other breach.  Any action or inaction by us in response to any breach of these Terms does not limit our rights with respect to actions we may take in response to any other similar or different type of breach.

Entire Agreement, Conflict, Headings and Severability:  These Terms constitute the entire agreement between us and you with respect to the matters set forth herein, and supersede any prior agreement between us and you with respect to your use of the Site.  Headings in these Terms are for reference only and do not limit the scope or extent of such section.  In the event of any conflict between these Terms and any other terms and conditions applicable to a product, tool or service offered on our Site, the Terms herein shall prevail.  If any portion of these Terms is found to be invalid or unenforceable by any court of competent jurisdiction, the other provisions of these Terms shall remain in full force and effect.  Further, any provision of these Terms held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

Assignment:  We may assign these Terms in our sole discretion.  Users must obtain our prior written consent to assign these Terms, which may be granted or withheld by us in our sole discretion.

**Additional Terms and Conditions Applicable to Our Members**

In addition to being bound by the Terms set forth above, members who purchase subscriptions to advertise a property on the Site are also bound by the following terms, which are in addition to any other terms agreed to in connection with purchasing or renewing a subscription.

**22.   Member Eligibility; Accuracy of Information; Representations.**

Our services may only be used by members who can form legally binding contracts under applicable law. If you are registering as a business entity, you represent that you have the authority to bind the entity to these Terms. Each member represents and covenants that all information submitted to us and to the Site during such member's registration with the Site shall be true and correct. Each member further agrees to promptly provide notice to the Site by contacting us as provided above under "General – Contact Us" regarding any updates to any such contact information previously submitted by such member to the Site.  Each member agrees to promptly provide such proof of personal identification, proof of ownership of the property listed on the Site, and proof of authority to list the property as we may request. Each member further represents and covenants that: (i) it owns and/or has all necessary rights and authority to offer for rent and to rent the property listed by such member; (ii) it will not wrongfully withhold a rental deposit in breach of the underlying rental agreement; (iii) that it will accurately describe the subject rental property, will not fail to disclose a material defect in, or material information about, a rental property and will upon request, or otherwise from time to time, review the property listing content and location or geographic description to ensure it is accurate and not

misleading ; (iv) that it will not wrongfully deny access to the listed property; and (v) that it will not fail to provide a refund when due in accordance with the applicable cancellation policy or underlying rental agreement. Upon our request, each member agrees to promptly provide to us such proof of personal identification, proof that the condition, location, or amenities associated with the property are accurately described in the listing, proof of ownership of the property listed on the Site, and/or proof of authority to list the property as we may request. If you are a tenant who is listing a home, condominium, or apartment, please refer to your rental contract or lease, or contact your landlord, prior to listing the property to determine whether your lease or contract contains restrictions that would limit your ability to list your room, home, condominium or apartment.  Listing your home may be a violation of your lease or contract and could result in legal action against you by your landlord, including possible eviction.

### 23.    Appearance in Search Results.

We cannot guarantee that your listing will appear in any specific order in search results on a Site. Search order will fluctuate based on a variety of factors such as search parameters, subscription level purchased, listing quality, how frequently a calendar is updated, and other factors that we may deem important to the user experience from time to time. Listing appearance or order in any particular search result may also vary depending on the search criteria used by the particular traveler. We reserve the right to apply various search algorithms or to use methods to optimize results for particular travelers' experiences and the overall marketplace. Listings placed on a non-subscription basis, such as pay-per-booking, may not always appear in search results in any particular subscription level or at all. Listings distributed on third party sites are not guaranteed to display on such third party site in any particular order or at all. Search results and sort order may appear different on HomeAway's mobile application than they appear on the Site. To optimize the search experience for both members and travelers, HomeAway retains the right to run occasional tests that will be limited in duration but may alter how we display search results and subscription levels.

### 24. Content, Layout and Copy.

All content and copy edits submitted by members are subject to review and approval by us in our sole discretion.  We reserve the right to refuse to publish any content that we determine in our sole discretion does not meet these Terms or is otherwise unacceptable to us.  However, we assume no duty to review content and we shall not have any liability for any loss or damage resulting from the design or positioning of the copy, properties, content and/or photographs or any change made to any content, photograph or copy submitted by any member. All content must meet these Terms and our Content Guidelines. We reserve the right to edit content submitted to the Site in a non-substantive manner solely to cause the content to comply with our content guidelines or formatting requirements.   Members are responsible for reviewing and ensuring that any content displayed on the Site appears as the member intended.

### 25.    Photographs.

Photographs should depict the vacation rental as the main subject of the photograph and may not include children or adults if you do not have their legal consent or any information that would violate the privacy rights, intellectual property rights or any other rights of a third party. Photographs must meet our Content Guidelines. We reserve the right not to display or to remove any photographs that we determine, in our sole discretion, do not meet these Terms or are otherwise unacceptable to us.

By submitting a photograph to us, the member represents and warrants that (a) (i) it holds all intellectual property rights with respect to each submitted photograph, or (ii) it has secured from the copyright holder all rights necessary for the photograph to be used in an online advertisement, (b) that any people in the photograph have given permission for their likeness to be displayed in an online advertisement on the Site, (c) that the photograph accurately and fairly represents the subject of the photograph and has not been altered in any manner that would mislead a viewer of that photograph, and (d) that it will indemnify and hold harmless the Site and any member of the HOMEAWAY Group from any cause of action arising from any misrepresentation with respect to any and all photographs so submitted.

It is the member's responsibility to obtain reproduction permission for all photographic and other material used in its listings. The member warrants that it is the owner of the copyright in such material or is authorized by the owner thereof to grant to us the rights therein contained and agrees to provide any proof of such rights to us that we may request.

Further, each member agrees that we may reproduce in whole or in part any photographic material supplied by such member in the promotion of either such member's property or the promotion of the Site.

**26.   Uses of Our Trademarks or Logos.**

There are limited ways in which you may use our trademarks or logos without specific prior written authorization. The following are general guidelines: It is usually permissible for you to refer to HomeAway or the name of one of our affiliate websites on which you list your property in a descriptive manner in your listing on the Site or in other permissible communications. For example, you might say "Check out my vacation rental on HomeAway," or "I list properties on HomeAway." However, you may not refer to HomeAway or any of our affiliates in any way that might lead someone to believe that your company or site is sponsored by, affiliated with, or endorsed by HomeAway or one of our affiliates. For example, you may not say "HomeAway sponsors my vacation rental," or describe your property as "HomeAway's best vacation rental." You may not use the HomeAway name or one of our affiliates' names on any other website that lists vacation rentals without our prior written authorization.

The HomeAway name and logo and those of the HomeAway Group and our affiliates are registered trademarks in the United States and other jurisdictions around the world. We generally do not permit the use of our names and logos, other than as described above or with our prior written authorization. If you want permission to use our name and/or logo in any other manner, including, without limitation, on any website, business card, signage, t-shirts, etc., or if you have other questions, you may visit help.homeaway.com.

**27.   Hypertext Links.**

We reserve the right to refuse hypertext links to, or addresses of, other web sites from members' pages, and to remove links or web addresses without notice at our sole discretion. Further, we reserve the right to charge for hypertext links at any time.

**28.   Substitution of Properties; Advertising More Than One Property; Property Managers.**

Each listing must relate to an individual and uniquely identified property, unless (i) you are a property manager who has signed up for one of our packages for members who are property managers or (ii) you otherwise purchased a listing package that expressly allows for substitution of properties. This means that:

(a)   The property in a listing may not be substituted for another property without our consent.  We may approve a request in our discretion if the property manager's contract for the property was terminated and the member provides sufficient proof, as requested by us, and completes any additional request forms we may request.  The term of the subscription for any substituted property shall be the same as the term of the originally listed property (i.e., the term will not be extended past the original term).

If a member submits changes to an existing listing that, if approved, would substantially alter the listing to make it that of another property, then we have the right to terminate the listing and may choose, in our sole discretion, to retain any fees associated with the term of the previously existing listing as compensation for the violation of this condition.

(b)   The listing specifically cannot be a mere example of properties in a given area.  Only one property can appear on each listing, unless it is a property with multiple rental units on the same site and additional advertising units are purchased.  We reserve the right to amend the copy or remove any listing when more than one property is described in such listing, and may choose, in our sole discretion to retain any fees associated with the initial term of such non-conforming listing as compensation for the violation of this condition.

(c)   Members who manage twenty or more properties should contact HomeAway for Property Managers at (888) 581-1849 to discuss the packages that may best suit their needs.  All other subscription listing packages require one subscription per listing (one subscription per property).  Contact HomeAway for Property Managers for additional information.

**29.   Unauthorized Payment Methods; Subscription Payments; Automatic Renewal of Subscription Payments.**

Payments between members and travelers: We are not a party to any payment transaction between members and travelers, even if we receive a commission in connection with any payment transaction.  No member may request any traveler to mail cash, or utilize any instant-cash wire transfer service such as Western Union or MoneyGram in payment for all or part of a

property rental transaction. Any violation of this term or any other unacceptable payment methods that may be posted on the Site may result in the immediate removal of the non-conforming listing from the Site without notice to the member and without refund.  From time to time, we may become aware of users attempting to conduct a transaction that would involve an unauthorized payment method or a fraudulent payment method.  Ideally, we hope to be able to assist users in avoiding such transactions, but we assume no liability or responsibility to do so or to inform users of any such actual or suspected activity.

Payments for subscriptions: Payment for subscription listings must be made to us in U.S. Dollars paid either by major credit or debit card, or a check drawn on a U.S. bank.

Automatic Renewal of Subscriptions: For any subscription paid for by credit card, such subscription shall automatically renew at the expiration of the then-current term for an additional term of the same duration (as the previous term) and at the then-current non-promotional subscription rate. If such subscription was purchased by check or another form of payment other than by credit card (if such other payment form was permitted), such subscription shall not be automatically renewed.  Automatic renewal applies to all subscriptions purchased by credit card.  The automatic renewal feature allows your service to remain uninterrupted at the expiration of your then-current term. If you wish to turn off auto-renewal, you must log on to your account and manually turn off auto-renewal in your owner dashboard (for HomeAway.com, VRBO.com and VacationRentals.com), at least 5 days prior to expiration of the then-current term. Upon any such turning off auto-renewal, your subscription will remain active through the expiration of your then-current subscription term; however your subscription will not be automatically renewed upon the expiration of your then current term. If your subscription does not auto-renew or expires at the end of your then current subscription term and you desire to renew your subscription, you will be required to pay the then-current non-promotional subscription rate to renew your subscription or to activate a new subscription.

If you do not turn off auto-renewal and you continue to use our subscription service, you re-affirm and authorize us to charge your credit card at the end of each subscription term for an additional term of the same duration as the initial term and at the then-current non-promotional subscription rate for the same product or service.

If the product or service that you last purchased has changed in any way or is no longer offered, you agree and authorize us to charge your credit card at the renewal of your subscription term for a product or service that is the most similar, as determined by us, to the product or service that you previously purchased, even if the price of such product or service is not the same of the prior product or service that you purchased. You agree to be responsible for any such charges, and we reserve the right to obtain payment directly from you if necessary.

If you wish to avoid billing of subscription fees for the renewal term to your credit card, you must turn off auto-renewal for your subscription at least 5 days before it renews.  If you wish to change your credit card to be charged or if your credit card information otherwise changes, see help.homeaway.com for FAQ information on updating the information in your owner dashboard, as applicable or to provide the new or different credit card information, as applicable, to provide the new or different credit card information.

Non-Subscription Listings:  If a Site enables you to list your property on a basis other than by subscription, you agree to pay us compensation as described to you in the sign up process for each rental of the property displayed in such listing, which terms may be updated by us from time to time without notice by us displaying the terms on the Site on which you signed up for the listing.  The sign up process and additional notices you may receive from us may also provide additional terms and conditions for such listings.

## 30.  Subscription Term, Refund Requests and Termination or Transfer of Listings.

Subscription Term: All subscription listings are sold to run the full term that is chosen by the member. The term starts on the date that the member submits the full or initial (as applicable) payment and expires on the last date of the term chosen by the member. For example, for an annual subscription term, if the member submits payment for the subscription on July 1st, the subscription would expire on June 30 of the following year.

Refund Requests: Generally, no refunds are available unless a member qualifies for a refund under any guarantee program we may have in effect.  If you believe you qualify for a refund under a guarantee we are offering, you may contact customer support by sending your request to the address listed under "General – Contact Us" above and include your listing number, and your reason for dissatisfaction.  We will then determine, in accordance with the applicable guarantee program, whether any refund is due.

Refund Requests for Subscription Listings Not Completed:  In the event you purchase a subscription for a listing but do not complete the creation of the listing or the listing does not get posted after purchase for any other reason, refund requests will be considered only during the first three (3) months following the purchase date.  If within such three (3) month period you do not complete the creation of your listing as we may require to display such listing on the Site (i) you shall not be entitled to any refund and (ii) your subscription will expire no more than 15 months from the purchase date of the subscription regardless of the listing posting date.

If you renew your subscription, or if your subscription automatically renews under its terms of your subscription, your listing will remain online for the entire subscription period without refund. If you sell your property and no longer wish for the listing to remain online, please contact us and we can remove the listing; however, no refund will be owed.

Our Right to Terminate a Listing: If, in our sole discretion, any member submits unsuitable material to our Site or into our database, misuses the Site or our online system or is in material breach of these Terms, we reserve the right to terminate such member's subscription(s) immediately without refund. In addition, if we become aware of or receive a complaint or a series of complaints from any user or other third party regarding a member's listing or rental practices that, in our sole discretion, warrants the immediate removal of such member's listing from the Site (for example, and without limitation, if a member double-books a property for multiple travelers on the same date, or engages in any practice that, in our sole discretion, would be considered deceptive, unfair or improper within the vacation rental industry or in an online marketplace for vacation rentals, if we determine or suspect that the member's payment-related practices or procedures are not secure, legal or otherwise proper, or if we receive a complaint

that any listing's content infringes on the rights of a third party), then we may immediately terminate such member's listing(s) or subscription(s) without notice to the member and without refund.  We assume no duty to investigate complaints.  Finally, if any member is abusive or offensive to any employee or representative of the HomeAway Group, we reserve the right to terminate such member's listing(s) or subscription(s) immediately without refund. Finally, if any member is in breach of these Terms or its obligations to us or any of our third party providers then we may terminate such member's subscription(s) immediately without notice to the member and without refund.

Transfer of Listing to a Third Party: No listing may be transferred to another party. In the event of a property sale or change in property management, HomeAway will provide guidance on options for creating a new listing.

31. **Additional Terms Applicable to Pay-Per-Booking Listings**.

A description of the features and applicable fees and commissions that will apply to pay-per-booking listings will be displayed under the "List Your Property" tab of the Site offering such product, when made generally available.

When available, pay-per-booking listings may be agreed to by property owners and managers approved for an online payments account.  Such accounts are subject to the additional terms, conditions and requirements set forth during the sign up for such an account, including those of our third party providers.  Online booking and payments is required for all pay-per-booking listings.  Online payments are provided by third party providers and are subject to the terms and conditions and privacy policies of such providers.

Pay-per-booking listings may be converted to subscription listings at any time; however any bookings already made shall remain subject to applicable pay-per-booking fees and commissions.

Cancellation policies are required for all pay-per-booking listings, and requirements for such cancellation policies shall be displayed through the "List Your Property tab of the Site offering the pay-per-booking listing.  To the fullest extent legally permissible, Members who list their properties in a pay-per-booking listing, agree to rent such properties through such listing and not through any other means.

32. **Distribution of Listings to Third Party Websites**.

To enable Members to obtain broader distribution of their properties, we may provide your listing information, or otherwise provide for the distribution of, your listing on a Third Party Website.  Additional terms and conditions may apply to such distributions, as we may notify you of via your online account or email.